Holly LORNSON, Individually, and
as Successor Special Administrator of
the Estate of Janice M. Sanders, and as
Personal Representative of the Estate of
Joseph D. Sanders, and Kim Hoertsch,
Individually, and as Successor Special
Administrator of the Estate of Janice M.
Sanders, and as Personal Representative
of the Estate of Joseph D. Sanders,
Plaintiffs-Appellants,

Tommy THOMPSON Secretary, Department of
Health & Human Services, Involuntary-Plaintiff,

v.

Nadeem SIDDIQUI, M.D., Paul McAvoy, M.D.,
Matthew Williams, M.D., James E. Haine, M.D.,
John E. Almquist, M.D., Frederick W. Knoch,
M.D., Affinity Medical Group/Affinity Health
System, St. Elizabeth Hospital, Inc., The Medical
Protective Company, Preferred Professional
Insurance Company, and Wisconsin Patients
Compensation Fund, Defendants-Respondents.

Supreme Court

*No. 2005AP2315. Oral argument October 11, 2006.*
*—Decided July 10, 2007.*

2007 WI 92

519

(Also reported in 735 N.W.2d 55.)

521

For the plaintiffs-appellants there were briefs by *Lynn R. Laufenberg* and *Laufenberg & Hoefle, S.C.*, Milwaukee, and oral argument by *Lynn R. Laufenberg*.

For the defendants-respondents there was a brief by *Michael P. Russart* and *Hinshaw & Culbertson LLP*, Milwaukee; *David Colwin* and *Sager, Colwin, Samuelsen & Associates, S.C.*, Fond du Lac; *Terri L. Weber* and *Nash, Spindler, Grimstad & McCracken, LLP*,

Manitowoc; *Peter J. Hickey* and *Everson, Whitney, Everson & Brehm, S.C.,* Green Bay, and oral argument by *Michael P. Russart.*

An amicus curiae brief was filed by *Guy DuBeau* and *Axley Brynelson, LLP,* Madison, on behalf of the Wisconsin Hospital Association, Inc. and the Wisconsin Medical Society, Inc.

An amicus curiae brief was filed by *William C. Gleisner, III* and *Law Offices of William Gleisner,* Milwaukee; *D. James Weis* and *Habush, Habush & Rottier, S.C.,* Rhinelander, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. DAVID T. PROSSER, J.   This case is before the court on certification by the court of appeals, pursuant to Wis. Stat. § 809.61 (2005–06).[1] Holly Lornson (Lornson) and Kim Hoertsch (Hoertsch) seek review of a circuit court order dismissing their wrongful death claims against Nadeem Siddiqui, M.D.; Paul McAvoy, M.D.; Matthew Williams, M.D.; James E. Haine, M.D.; John E. Almquist, M.D.; Frederick W. Knoch, M.D.; Affinity Medical Group/Affinity Health System; St. Elizabeth Hospital Inc.; The Medical Protective Company; and the Preferred Professional Insurance Company (collectively, defendants).[2]

¶ 2.   Lornson and Hoertsch are the adult daughters of Janice and Joseph Sanders, both deceased. They appear in this litigation in several capacities, but ap-

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] The circuit court granted the Wisconsin Patients Compensation Fund's motion for summary judgment on the basis that the overall damages claimed by Lornson and Hoertsch would not exceed $1 million. Lornson and Hoertsch do not seek review of this order.

pear in this appeal as (1) personal representatives of their father's estate; and (2) individual claimants as adult children of their late mother.

¶ 3.  During his lifetime, Joseph Sanders filed a wrongful death claim against the defendants for medical negligence in the death of his wife Janice. He died before his case could go to trial. His daughters, Lornson and Hoertsch, were appointed personal representatives for their father's estate, and, in that capacity, they pursued his wrongful death claim, citing Wis. Stat. § 895.01(1)(o). At the same time, in the alternative, they made their own individual claims for the wrongful death of their mother, citing Wis. Stat. § 895.04(2).

¶ 4.  The circuit court dismissed these wrongful death claims on grounds that Lornson and Hoertsch lacked standing under the applicable statutes to maintain medical malpractice wrongful death claims. Lornson and Hoertsch appealed. The court of appeals certified the case to this court. After carefully reviewing the governing statutes and case law, we affirm. We hold that in wrongful death actions, an eligible claimant's cause of action does not survive the death of the claimant. Thus, Joseph Sanders' wrongful death claim does not survive. In a non-medical malpractice wrongful death case, under Wis. Stat. § 895.04(2), a new cause of action is available to the next claimant in the statutory hierarchy. In a medical malpractice wrongful death case, eligible claimants under Wis. Stat. § 655.007 are not subject to a statutory hierarchy like claimants under Wis. Stat. § 895.04(2). However, in a medical malpractice wrongful death case, adult children of the deceased (like Lornson and Hoertsch) are not listed as eligible claimants and are therefore not eligible because of the exclusivity of Wis. Stat. § 655.007, as interpreted

in *Czapinski v. St. Francis Hospital, Inc.,* 2000 WI 80, 236 Wis. 2d 316, 613 N.W.2d 120.

¶ 5. In addition, we hold that our interpretation of Wis. Stat. § 655.007 in conjunction with Wis. Stat. §§ 895.01(1)(o) and 895.04(2) does not deprive Joseph Sanders or his estate of a vested property right without due process or violate equal protection of the law. We remand the case to the circuit court for further proceedings on the separate claim of the estate of Janice M. Sanders.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶ 6. This appeal arises out of a medical malpractice wrongful death/survival action. On November 11, 2002, Janice Sanders died from complications of a large paraesophageal hiatal hernia. On October 22, 2003, Joseph Sanders filed a complaint against the defendants on behalf of himself individually and as special administrator of the estate of his deceased wife. In his complaint, Joseph Sanders alleged that defendants acted negligently by failing to timely diagnose and treat Janice Sanders' paraesophageal hernia. He alleged that the defendants' negligence led to Mrs. Sanders' excessive vomiting, aspiration, cardiopulmonary arrest, resuscitation, coma, and eventual death.

¶ 7. Joseph Sanders sought compensatory damages on behalf of his wife's estate for Mrs. Sanders' conscious pain and suffering before her death. He also sought compensatory damages on behalf of himself for the loss of society, companionship, and consortium of his wife; pecuniary loss of his wife's services; and medical, funeral, and burial expenses.

¶ 8. After initial discovery but before trial, Joseph Sanders died. On April 26, 2005, Joseph Sanders' coun-

sel filed a motion for substitution of plaintiffs and for leave to file a supplemental complaint. The motion asked the court for three things: (1) an order substituting Lornson and Hoertsch for Joseph Sanders as successor special administrators of the estate of Janice Sanders; (2) an order appointing Lornson and Hoertsch as personal representatives of the estate of Joseph Sanders; and (3) an order allowing Lornson and Hoertsch to file a supplemental complaint. The court issued two orders, one that appointed Lornson and Hoertsch as personal representatives of their father's estate and one that appointed Lornson and Hoertsch as successor administrators of their mother's estate. By consent of the parties, a supplemental complaint was filed on May 3, 2005.

¶ 9. Lornson and Hoertsch sought compensatory damages under three theories of recovery: (1) on behalf of the estate of Janice Sanders in their capacities as special administrators; (2) on behalf of the estate of Joseph Sanders in their capacities as personal representatives; and (3) alternative to the second theory, on behalf of themselves in their individual capacities as the surviving daughters and lineal heirs of Janice Sanders.

¶ 10. All defendants joined in a motion to dismiss the wrongful death claim asserted on behalf of Joseph Sanders' estate, and in the alternative, on behalf of Lornson and Hoertsch individually. The defendants asserted Lornson and Hoertsch lacked standing to bring a wrongful death claim in their capacities as personal representatives of their father's estate or as individuals. The defendants argued that the wrongful death claim did not survive the death of Joseph Sanders and that Lornson and Hoertsch, in their individual capacities, were not eligible to make a medical malpractice wrongful death claim under Wis. Stat. § 655.007. The defendants conceded that the survival claim by the

special administrators on behalf of Janice Sanders' estate was unaffected by Joseph Sanders' death.

¶ 11. The parties submitted their briefs, and on July 21, 2005, the Honorable Robert A. Hawley, judge of the Winnebago County Circuit Court, heard oral argument. The circuit court granted the defendants' motions to dismiss the wrongful death claims. The court reasoned that Wis. Stat. § 655.007 provided the exclusive list of claimants eligible to bring a medical malpractice action. It concluded that because the list in § 655.007 did not include adult children or a spouse's representative, the legislature did not intend for adult children or the spouse's representative to bring a wrongful death claim. The court also refused to apply the general provisions of the wrongful death statute in a medical malpractice case because those general provisions were not incorporated by reference into Chapter 655.

¶ 12. Lornson and Hoertsch filed a notice of appeal of the wrongful death dismissal, and the parties agreed to adjourn the trial of the estate's survival claim pending the resolution of this appeal. On May 17, 2006, the court of appeals certified the case to this court, asking us to address the issue of whether "a surviving spouse's wrongful death claim in a medical malpractice action survive[s] his or her own death such that his or her personal representatives have standing to pursue that claim." This court accepted certification on June 14, 2006. We also address the individual wrongful death claims of Mrs. Sanders' adult children.

II. STANDARD OF REVIEW

¶ 13. This case comes to us on review of a motion to dismiss. We address whether Lornson and Hoertsch

(hereinafter Lornson) assert claims upon which relief can be granted. *See Brew City Redevelopment Group, LLC v. Ferchill Group,* 2006 WI 128, ¶ 15, 297 Wis. 2d 606, 724 N.W.2d 879. This presents a question of law that we review de novo, benefiting from the certification memorandum and the circuit court's analysis. *Scott v. Savers Prop. & Cas. Ins. Co.,* 2003 WI 60, ¶ 6, 262 Wis. 2d 127, 663 N.W.2d 715. We take as true the allegations in the complaint and all reasonable inferences from those allegations. *Id.,* ¶ 5.

¶ 14. To determine whether Lornson has asserted claims upon which relief can be granted, we must interpret and apply several statutes, including Wis. Stat. §§ 655.006 and 655.007 and provisions of Wis. Stat. ch. 895. Statutory interpretation presents questions of law that we review de novo. *Vill. of Cross Plains v. Haanstad,* 2006 WI 16, ¶ 9, 288 Wis. 2d 551, 709 N.W.2d 447; *Rineck v. Johnson,* 155 Wis. 2d 659, 664, 456 N.W.2d 336 (1990), *overruled on other grounds by Chang v. State Farm Mut. Auto. Ins. Co.,* 182 Wis. 2d 549, 566, 514 N.W.2d 399 (1994).

## III. DISCUSSION

¶ 15. Defendants challenge the standing of Lornson to bring wrongful death claims under Wisconsin Statutes. To determine whether adult children of a deceased parent or the personal representatives of a surviving but now deceased spouse are eligible to bring a medical malpractice wrongful death claim, we look to the language of Wis. Stat. §§ 655.006 and 655.007.

¶ 16. Wisconsin Stat. § 655.006 provides in part: "Remedy. (1)(a) On and after July 24, 1975, every patient [and] every patient's representative . . . shall be conclusively presumed to have accepted to be bound by this chapter."

¶ 17. Wisconsin Stat. § 655.007 provides: "Patients' Claims. On and after July 24, 1975, any patient or the patient's representative having a claim or any spouse, parent, minor sibling or child of the patient having a derivative claim for injury or death on account of malpractice is subject to this chapter."

¶ 18. Wisconsin Stat. § 655.007 creates two kinds of claims: *direct* claims for injury or death on account of medical malpractice, and *derivative* claims for injury or death on account of medical malpractice. A patient has a direct claim for the patient's injury. The patient's representative has a direct claim for the patient's injury or death. There is no dispute that Lornson has a direct claim as successor special administrator of her mother's estate because all parties concede that the estate's claim survives.

¶ 19. There would be no dispute that Lornson also has a derivative claim under Wis. Stat. § 655.007 for her mother's death *if* the phrase "child of the patient" includes an *adult* child. However, this court held in *Czapinski* that *adult* children are not included in the § 655.007 list of claimants. In *Czapinski,* the court stated:

> [T]he language of Wis. Stat. § 893.55(4)(f) makes applicable to medical malpractice death cases only the limit on damages, and does not incorporate the wrongful death classification of claimants entitled to bring such an action. The classification of claimants entitled to bring a wrongful death suit for medical malpractice is limited to those enumerated in Wis. Stat. § 655.007. Legislative history shows that adult children were not intended to be included within this classification.
>
> . . . .

> We hold that an adult child lacks standing to recover for loss of society and companionship in a wrongful death case involving medical malpractice.

*Czapinski,* 236 Wis. 2d 316, ¶¶ 2, 33.

■

¶ 20. Only *minor* children and *minor* siblings, plus the spouse and parents of the patient, have derivative claims under Wis. Stat. § 655.007. As we elaborate in section III.B. *infra,* this settles the issue of Lornson's individual claim.[3]

¶ 21. In addition, there is no dispute that Joseph Sanders had a derivative wrongful death claim before his death, for he was a "spouse . . . of the patient." The certified question in this appeal is whether this derivative claim survived Joseph Sanders' death, inasmuch as the personal representative of any "spouse, parent, minor sibling or child of the patient"—like an adult child—is not included in the Wis. Stat. § 655.007 list.

¶ 22. Wisconsin has a separate statute on "[w]hat actions survive." Wis. Stat. § 895.01. Because of the existence of this statute, we must examine whether the language and history of Chapter 655 absolutely limit the potential claimants to the list enumerated in Wis. Stat. § 655.007, or whether the list of claimants may

---

[3] In *Pierce v. American Family Mutual Insurance Co.,* 2007 WI App 152, ___ Wis. 2d ___, 736 N.W.2d 247, the court of appeals interpreted Wis. Stat. § 895.04(4) to include adult children as eligible claimants under the wrongful death statute. However, the *Pierce* case was not a wrongful death case involving medical malpractice, and the court distinguished the case from *Czapinski v. St. Francis Hospital, Inc.,* 2000 WI 80, 236 Wis. 2d 316, 613 N.W.2d 120, on that basis. *Pierce,* ___ Wis. 2d ___, ¶ 10 n.3.

also include potential claimants allowed under the wrongful death statute. Wis. Stat. §§ 895.01(1)(o) and 895.04(2).

A. Exclusivity of Wisconsin Statute Chapter 655

¶ 23. Chapter 655 of the Wisconsin Statutes was enacted in 1975 "in response to a perceived economic and social crisis." *State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 499, 509, 261 N.W.2d 434 (1978). It established an exclusive procedure for the prosecution of malpractice claims against a health care provider. Wis. Stat. §§ 655.006, 655.007; *Strykowski,* 81 Wis. 2d at 499. Every patient and every patient's representative shall be "conclusively presumed to be bound by the provisions of the chapter regardless of injury or death." *Rineck,* 155 Wis. 2d at 665. Over the years, courts have grappled with the impact of the "exclusivity" of Chapter 655 and whether statutory provisions not referenced by or incorporated into Chapter 655 may be applied to medical malpractice actions.

¶ 24. One line of cases supports the proposition that Chapter 655 "precludes from application those statutory provisions not expressly referred to in that chapter." *Dziadosz v. Zirneski,* 177 Wis. 2d 59, 63, 501 N.W.2d 828 (Ct. App. 1993) (citing *Rineck,* 155 Wis. 2d at 666–67 ("We do not believe that the legislature would have taken pains to specifically refer to particular statutes . . . if it intended to incorporate without mention other miscellaneous general provisions, such as sec. 895.04(4).")); *see also Jelinek v. St. Paul Fire & Cas. Ins. Co.,* 182 Wis. 2d 1, 9–10, 512 N.W.2d 764 (1994), *superseded by statute,* 1995 Wis. Act 10, § 10 (codified at Wis. Stat. § 893.55(4)(f), *as recognized in Czapinski,* 236 Wis. 2d 316, ¶ 16). This interpretation of "exclusivity" would not only limit medical malpractice claimants

to the list in Wis. Stat. § 655.007 but also prevent any incorporation of general statutory provisions not referenced in Chapter 655. It would bar Lornson's claim as personal representative of her father's estate because Chapter 655 does not contain its own survival provisions or incorporate survival provisions from Chapter 895. It would also bar any claim she had as an adult child of Janice Sanders because Chapter 655 does not include an adult child as an eligible claimant and does not incorporate the eligible claimants provision of Wis. Stat. § 895.04(2).

¶ 25. There is, however, another line of cases that supports the proposition that Chapter 655 is not totally self-contained and that statutory provisions may be applied in medical malpractice cases if they do not conflict with Chapter 655. *See Storm v. Legion Ins. Co.,* 2003 WI 120, ¶ 33–35, 265 Wis. 2d 169, 665 N.W.2d 353; *Hoffman v. Memorial Hosp. of Iowa County,* 196 Wis. 2d 505, 513–14, 538 N.W.2d 627 (Ct. App. 1995). In *Storm,* the court stated that: "Numerous statutes, including civil procedure and discovery statutes, that are not located in Chapter 655 apply to claims brought for medical malpractice. . . . *Rineck* stands for the proposition that if general statutory provisions *conflict with* Chapter 655, the latter will trump the general statute." *Storm,* 265 Wis. 2d 169, ¶¶ 34–35 (internal citations omitted). "If we accept the view that ch. 655, Stats., is self-contained, subject to no outside rules of practice and procedure, there would be no discovery, summary judgment, or amendment of pleadings in medical malpractice cases because ch. 655 does not mention those procedures." *Hoffman,* 196 Wis. 2d at 514. This second line of cases permits consideration of statutory provisions that do not conflict with the specific provisions or general purposes of Chapter 655.

¶ 26. As we interpret statutes, we are mindful of our obligation, first, to apply the plain language of a statute so long as it does not produce a plainly absurd result, and, second, when the statute is ambiguous, to seek out and faithfully apply legislative intent. *Teschendorf v. State Farm Ins. Co.,* 2006 WI 89, ¶ 15, 293 Wis. 2d 123, 717 N.W.2d 258. We do not discern the language of Chapter 655 to prohibit the applicability of general statutes if these statutes complement and do not conflict with Chapter 655. Against this background, we turn to Wis. Stat. § 895.04(2) to determine whether the statute complements or conflicts with Chapter 655.

B.  Eligible Claimants in Wrongful Death Actions Under Wisconsin Stat. § 895.04

¶ 27. Wisconsin Stat. § 895.04(1) reads as follows: "(1) An action for wrongful death may be brought by the personal representative of the deceased person or by the person to whom the amount recovered belongs."

¶ 28. Wisconsin Stat. § 895.04(2) reads in part as follows:

> If the deceased leaves surviving a spouse, and minor children under 18 years of age with whose support the deceased was legally charged, the court before whom the action is pending, or if no action is pending any court of record, in recognition of the duty and responsibility of a parent to support minor children, shall determine the amount, if any, to be set aside for the protection of such children . . . . If there are no such surviving minor children, the amount recovered shall belong and be paid to the spouse of the deceased; if no spouse survives, to the deceased's lineal heirs as determined by s. 852.01; if no lineal heirs survive, to the deceased's brothers and sisters. If any such relative

dies before judgment in the action, the relative next in order shall be entitled to recover for the wrongful death.

¶ 29. Wisconsin Stat. § 895.04(2) provides a hierarchical list of wrongful death claimants. Lineal heirs of the deceased are included on the list. Lineal heirs become eligible when "no spouse [of the deceased] survives." Lineal heirs include adult children. Thus, the wrongful death statute makes Lornson eligible to assert a wrongful death claim for her mother's death. However, her eligibility under Wis. Stat. § 895.04(2) is in direct conflict with her ineligibility under Wis. Stat. § 655.007 and would contradict the decisions in *Czapinski* and *Dziadosz*. Consequently, in view of the unquestioned primacy of Chapter 655 in medical malpractice cases, Lornson's individual claim in her capacity as an adult child is barred under Wis. Stat. § 655.007.

C. Survival of Wrongful Death Claim Upon Death of the Claimant

¶ 30. Lornson's claim as Joseph Sanders' personal representative is more difficult to assess because Wis. Stat. § 655.007 clearly allows a spouse to bring a wrongful death claim, and the chapter is silent as to what happens to that claim when the spouse dies before judgment. If Chapter 655 spoke to the survival of an eligible claimant's claim, this court would have its marching orders. The chapter's silence requires interpretation.

¶ 31. Because Chapter 655 is silent regarding the survival of a spouse's medical malpractice wrongful death claim, we refer to the general wrongful death provisions in Chapter 895 to determine whether the

537

spouse's claim survives. We rely on statutory provisions, rather than common law, to determine survivability because a wrongful death action is a purely statutory creation unknown to common law, and thus its survivability depends solely on a statutory provision. *Kranz v. Wis. Trust Co.*, 155 Wis. 40, 42, 143 N.W. 1049 (1913); *Brown v. Chicago & N.W. Ry. Co.*, 102 Wis. 137, 140, 77 N.W. 48 (1899).

¶ 32. Wisconsin Stat. § 895.01(1) is the general survival statute, and paragraph (o) addresses the survival of a wrongful death claim. Wisconsin Stat. § 895.01(1)(o) provides:

> (1) In addition to the causes of action that survive at common law, all of the following also survive:
>
> . . . .
>
> (o) Causes of action for wrongful death, which shall survive the death of the wrongdoer whether or not the death of the wrongdoer occurred before or after the death of the injured person.

Wis. Stat. § 895.01(1)(o).

¶ 33. Lornson argues that the language of Wis. Stat. § 895.01(1)(o) is unambiguous. She argues that paragraph (o) assures that causes of action for wrongful death survive the death of the claimant as well as the death of the wrongdoer. She describes the clause beginning with "which" as a nonrestrictive, relative pronoun clause, meaning that this language about the death of the wrongdoer simply provides additional, but not essential, information about the phrase that it modifies.

¶ 34. Though arguing that Wis. Stat. § 895.01(1)(o) is unambiguous, Lornson fails to explain why the legislature would include additional informa-

538

tion about the death of the wrongdoer if such information were not essential to the meaning of the statute. Courts are to construe statutes so as to avoid rendering any of the statutory language superfluous. *Robin K. v. Lamanda M.*, 2006 WI 68, ¶ 16, 291 Wis. 2d 333, 718 N.W.2d 38.

¶ 35.   If the legislature intended for the wrongful death cause of action to survive the death of both the claimant and the wrongdoer, why did it include specific language about the death of the wrongdoer but not include language about the death of the claimant? If the legislature intended for the wrongful death cause of action to survive the death of both the claimant and the wrongdoer, why did the legislature not write paragraph (o) consistent with the other paragraphs in the survival statute by stopping after the words "wrongful death"? In all the other paragraphs under Wis. Stat. § 895.01(1), the legislature provides simply that a particular cause of action survives, and does not add any non-restrictive, relative pronoun clauses about the death of the wrongdoer.[4]

¶ 36.   Lornson's interpretation, while a strict adherence to the rules of grammar, is not the only possible interpretation of Wis. Stat. § 895.01(1)(o). Another rea-

---

[4] *See, e.g.*, Wis. Stat. § 895.01(1)(a), (b), (c), and (d):

(1) In addition to the causes of action that survive at common law, all of the following also survive:

(a) Causes of action to determine paternity.

(b) Causes of action for the recovery of personal property or the unlawful withholding or conversion of personal property.

(c) Causes of action for the recovery of the possession of real estate and for the unlawful withholding of the possession of real estate.

(d) Causes of action for assault and battery.

sonable interpretation of the statute is that, by specifically including the language about the death of the wrongdoer in paragraph (o), the legislature intended that the wrongful death cause of action survive only the death of the wrongdoer, and not the claimant.

¶ 37.  Thus, Wis. Stat. § 895.01(1)(o) is ambiguous because it is subject to more than one reasonable interpretation. *See State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 47, 271 Wis. 2d 633, 681 N.W.2d 110. This ambiguity is fortified after reading Wis. Stat. § 895.01(1)(o) in the context of Chapter 895. As we stated in *Kalal,*

> Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.

*Kalal,* 271 Wis. 2d 633, ¶ 46. When we read Wis. Stat. § 895.01(1)(o) in the context of surrounding or closely related statutes in the chapter, we conclude that § 895.01(1)(o) conflicts with the plain language of Wis. Stat. § 895.04(2). Ambiguity may be created by the interaction of two conflicting statutes. *Morrissette v. DeZonia,* 63 Wis. 2d 429, 436, 217 N.W.2d 377 (1974).

¶ 38.  Wisconsin Stat. § 895.04(2) provides a hierarchy of eligible claimants in a general wrongful death action. As we noted above, under the statute, the spouse and minor children are first in line to make a wrongful death claim; if there are no minor children, the claim belongs to the spouse; if no spouse survives, the claim belongs to the lineal heirs (as determined by Wis. Stat.

540

§ 852.01); if no lineal heirs survive, the claim belongs to the deceased's brothers and sisters. *See* Wis. Stat. § 895.04(2).

¶ 39. This statute specifically provides that "[i]f any such relative dies before judgment in the action, the relative next in order *shall* be entitled to recover for the wrongful death." Wis. Stat. § 895.04(2) (emphasis added). It is implicit in this provision that a claimant's cause of action does not survive the claimant's death before judgment; rather, a new cause of action is available to the next relative in line. This was the interpretation given by this court in *Eleason v. Western Casualty & Surety Co.*, 254 Wis. 134, 139, 35 N.W.2d 301 (1948), and it has never been changed. To interpret a wrongful death claim as surviving the death of the claimant would render this provision in § 895.04(2) meaningless and superfluous because no causes of action would pass to the next relative in line but would be assumed by the claimant's personal representative. Statutory construction requires that a law be construed so that no word or clause is surplusage. *See Kalal*, 271 Wis. 2d 633, ¶ 46.

¶ 40. Therefore, because Wis. Stat. § 895.01(1)(o) is inconsistent in its drafting with the other paragraphs in Wis. Stat. § 895.01(1), contains superfluous language if the language about the death of the wrongdoer is stripped of all significance, and directly conflicts with Wis. Stat. § 895.04(2), we conclude that Wis. Stat. § 895.01(1)(o) is ambiguous. We therefore refer to the legislative history of Wis. Stat. §§ 895.01(1)(o) and 895.04(2) to discern their meaning. *See Kalal*, 271 Wis. 2d 633, ¶¶ 50–51.

¶ 41.   We begin with historical context. Actions for wrongful death are created by statute and did not survive at common law. Thus, "[u]nless some statute can be found providing for survival, the action abates." *Kranz,* 155 Wis. at 42. This principle has been part of Wisconsin law since statehood.

¶ 42.   The first case to discuss this principle was *Woodward v. Chicago & Northwestern Railway Co.,* 23 Wis. 400 (June Term, 1868). Julia Woodward was allegedly killed by negligence. A complaint was filed by her husband, claiming special damages. Before judgment, the husband died and the defendant claimed that the wrongful death cause of action had abated. *Id.* at 400. The court said: .

> In this case, the deceased, who was a married woman, left a husband, who survived until some time after this action was commenced. Upon her death, therefore, the right of action, by the statute, vested solely and exclusively for the benefit of her husband. He alone was entitled to the amount to be recovered, and could hold and dispose of the same at pleasure. The lineal descendants and ancestors of the deceased had no interest whatever in the action . . . .

> The question then arises as to the effect of the death of the husband: Did the action abate thereby, or does it survive, so that it may still be prosecuted for the benefit of the infant child . . . ?

> [Being] an action of tort, and the sole party in interest having died, the next inquiry is, whether it falls within the general rule of the common law, that such an action does not survive the death of the party in whose favor it existed. It is very clear to our minds that it is not distinguishable in this particular from other actions of tort, and that the common law must govern,

unless it has been taken out of the operation of that rule by some express provision of statute. We know of no such provision.

. . . .

. . . It appears that the person so entitled died, and that the right of action expired with him . . . .

*Id.* at 404–06.

¶ 43. The principle that a wrongful death claim does not survive the death of the claimant was affirmed in *Schmidt v. Menasha Woodenware Co.,* 99 Wis. 300, 303, 74 N.W. 797 (1898). It was reaffirmed in 1948 in *Eleason.* However, the *Eleason* court noted that the legislature changed and ameliorated the law in 1931, ch. 263, Laws of 1931, adding the following sentence to Wis. Stat. § 331.04 (the forerunner of Wis. Stat. § 895.04(2)): "If any of the foregoing relatives shall die at any time after such cause of action shall have accrued, the relative or relatives next in order named above shall be entitled to recover for the wrongful death of the deceased."[5] The court explained: "By that clause, when the widow [of the deceased] died, a cause of action for the wrongful death [of the deceased] vested in the deceased's lineal descendants. It was not her cause of action, but a new one given the lineal descendants by the statute." *Eleason,* 254 Wis. at 139; *see also Herro v. Steidl,* 255 Wis. 65, 68, 37 N.W.2d 874 (1949); *Arendt v. Kratz,* 258 Wis. 437, 441, 46 N.W.2d 219 (1951); *Murray v. Dewar,* 6 Wis. 2d 411, 94 N.W.2d 635 (1959); *Collins v. Gee,* 82 Wis. 2d 376, 382–83, 263 N.W.2d 158 (1978)

---

[5] The contemporary equivalent of the above-quoted language is contained in Wis. Stat. § 895.04(2): "If any such relative dies before judgment in the action, the relative next in order shall be entitled to recover for the wrongful death."

("[I]t is clearly the law of Wisconsin that a cause of action of a particular beneficiary under the wrongful death statute terminates upon the death of the beneficiary where no judgment has been entered.").[6]

¶ 44. To sum up, the legislature has historically used the wrongful death statute, Wis. Stat. § 895.04, to delineate the eligibility and priority of *claimants.* The statute is hierarchical. Thus, a claimant's personal claim does not survive his death; it is succeeded by a new claim for someone lower in the hierarchy.

¶ 45. Wrongful death claims also abated at common law upon the death of the wrongdoer. *See Kranz,* 155 Wis. 40; *Layton v. Rowland,* 197 Wis. 535, 222 N.W. 811 (1929).

¶ 46. In *Kranz,* the court held that based on the survival statute at the time, a widow's claim for wrongful death of her husband did not survive the death of the wrongdoer. *Kranz,* 155 Wis. at 43. In that case, the wrongdoer died after the husband died but before the widow of the deceased obtained judgment in the action. *Id.* at 41. The court noted that if the legislature intended a different rule, it could easily provide one. *Id.* at 44.

¶ 47. Sixteen years later, the *Layton* court upheld *Kranz,* noting that the legislature had taken no action in response to *Kranz,* and therefore the court did "not deem it proper to reconsider the matter." *Layton,* 197 Wis. at 537.

---

[6] At least one other jurisdiction has cited Wisconsin as a jurisdiction that holds that the wrongful death claim abates upon the death of the claimant. *See Johnson v. Consolidated Freightways, Inc.,* 420 N.W.2d 608, 611 (Minn. 1988) (citing *Schmidt v. Menasha Woodenware Co.,* 99 Wis. 300, 74 N.W. 797 (1898)).

¶ 48. In 1933 the legislature responded to the court's suggestions that the survival statute, Wis. Stat. § 331.01, be changed. It added this sentence: "Actions for wrongful death shall survive the death of the wrongdoer."[7]

¶ 49. A problem surfaced almost immediately. In *Hegel v. George*, 218 Wis. 327, 259 N.W. 862 (1935), the court concluded that the cause of action for wrongful death did not survive the death of the wrongdoer when the wrongdoer died prior to the death of the injured person. *Id.* at 329. The court said that where the wrongdoer died before the injured person, the cause of action for wrongful death—which is a separate and distinct action from any personal injury action—had not arisen or accrued when the wrongdoer died. *Id.* at 330. Hence, the court found that the 1933 amendment to the survival statute "operate[d] only upon causes of action which ha[d] come into existence during the lifetime of the [wrongdoer]." *Id.* at 329.

---

[7] The complete survival statute, as amended by § 1, ch. 53, Laws of 1933, read as follows:

> In addition to the actions which survive at common law the following shall also survive: Actions for the recovery of personal property or the unlawful withholding or conversion thereof, for the recovery of the possession of real estate and for the unlawful withholding of the possession thereof, for assault and battery, false imprisonment or other damage to the person, for all damage done to the property rights or interests of another, for goods taken and carried away, for damages done to real or personal estate, equitable actions to set aside conveyances of real estate, to compel a reconveyance thereof, or to quiet the title thereto, and for a specific performance of contracts relating to real estate; provided this act shall have no application to pending litigation. *Actions for wrongful death shall survive the death of the wrongdoer.*

Wis. Stat. § 331.01 (1933–34) (emphasis added).

¶ 50. In response to *Hegel,* the legislature amended the survival statute in 1937 and added the following underlined language: "Actions for wrongful death shall survive the death of the wrongdoer *whether or not the death of the wrongdoer occurred before or after the death of the injured person."* § 1, ch. 189, Laws of 1937; *see also* drafting records, § 1, ch. 189, Laws of 1937 (located at the Legislative Reference Bureau in Madison, Wisconsin).

¶ 51. Although the survival statute was amended several times thereafter,[8] the pertinent language concerning the survival of a wrongful death claim upon the death of the wrongdoer remained unchanged until 1999 when the legislature amended the statute again. *See* 1999 Wis. Act 85, § 171. In 1999 the legislature reorganized Wis. Stat. § 895.01(1), outlining all the causes of action that survive in individual lettered paragraphs. The provision on wrongful death was placed in paragraph (o) and changed as indicated by the strikethrough and underline:

> (1) In addition to the causes of action that survive at common law, all of the following ~~shall~~ also survive: ~~causes~~
>
> . . . .
>
> (o) Causes of action for wrongful death, which shall survive the death of the wrongdoer whether or not the death of the wrongdoer occurred before or after the death of the injured person.

Wis. Stat. § 895.01(1)(o).

¶ 52. The 1999 amendment made ambiguous the wrongful death survival provision. As described earlier,

---

[8] *See, e.g.,* § 3, ch. 176, Laws of 1977; 1987 Wis. Act 399, § 472zkbb; 1993 Wis. Act 481, § 192.

the addition of the comma and the "which" created a nonrestrictive clause, making all language about the death of the wrongdoer arguably nonessential and superfluous. Where the survival statute once provided that a wrongful death claim survived only the death of the wrongdoer, the 1999 amendment to the survival statute made ambiguous whether a wrongful death claim survived both the death of the wrongdoer and the claimant.

¶ 53. Before the 1999 legislation, Wis. Stat. §§ 895.01(1) and 895.04(2) did not conflict. The first dealt with wrongdoers; the second dealt with claimants. After the 1999 amendment, it became unclear whether the legislature intended to substantively change Wis. Stat. § 895.01(1) by extending its scope to a new class of wrongful death cases, beyond its historical limit.

¶ 54. After analyzing the legislative history of Wis. Stat. § 895.01(1), we conclude that the legislature did not intend to make any substantive change when it amended the law in 1999. Five pieces of evidence lead us to this conclusion.

¶ 55. The first piece of evidence that the legislature intended merely to reorganize the statute with no substantive change is the fact that the assembly bill that led to 1999 Wis. Act 85 (codified in part at Wis. Stat. § 895.01) is a Revisor's Correction Bill. 1999 A.B. 925. This fact is significant because the Revisor's duties are mainly ministerial and editorial; the Revisor rarely proposes any substantive changes in the law, and if it does, the changes are very minor. *See* Wis. Stat. § 13.93(2)(j). Wisconsin Stat. § 13.93(2) spells out the duties of the Revisor of Statutes. It provides in part:

> The revisor of statutes shall:
>
> . . . .

547

(j) In cooperation with the law revision committee, systematically examine and identify for revision by the legislature the statutes and session laws to eliminate defects, anachronisms, conflicts, ambiguities, and unconstitutional or obsolete provisions. The revisor shall prepare and, at each session of the legislature, present to the law revision committee bills that eliminate identified defects, anachronisms, conflicts, ambiguities, and unconstitutional or obsolete provisions. These bills may include minor substantive changes in the statutes and session laws necessary to accomplish the purposes of this paragraph.

Wis. Stat. § 13.93(2)(j).

¶ 56. The second piece of evidence that the legislature intended no substantive change in the section is the "relating clause," which provides that 1999 Wis. Act 85 is an act "relating to: repealing, consolidating, renumbering, amending and revising various provisions of the statutes for the purpose of correcting errors, supplying omissions, correcting and clarifying references, eliminating defects, anachronisms, conflicts, ambiguities and obsolete provisions, reconciling conflicts and repelling unintended repeals." This descriptive language, which mirrors the Revisor's duties in Wis. Stat. § 13.93, reflects the legislature's lack of intent to make any substantive change to Wis. Stat. § 895.01.

¶ 57. The third piece of evidence that the legislature intended no substantive change in the section is the legislative note to the revision of Wis. Stat. § 895.01. It provides the following: "Subdivides long provision in outline form to break up long sentence, consistent with current style." Note, 1999 Wis. Act 85, § 171.

¶ 58. The fourth piece of evidence that the legislature did not intend to make any substantive change to Wis. Stat. § 895.01 is the length of the assembly bill that

promulgated 1999 Wis. Act 85 and the lack of amendments to it. The assembly bill is 95 pages long with 202 sections. 1999 A.B. 925. For a bill this long, one would expect at least some amendments if the bill were intended to make substantive changes to the law. Instead, no amendments were proposed, and the bill passed with unanimous consent. Bulletin of the Proceedings of the Wisconsin Legislature 1999–2000 Session, Part 4, Assembly, at 292. The lack of amendments to this bill illustrates the legislature's lack of intent to make any substantive change to § 895.01.

¶ 59. The fifth piece of evidence that the legislature did not intend to make any substantive change to Wis. Stat. § 895.01 is that the assembly bill has no amendment or cross-reference to Wis. Stat. § 895.04(2). The Revisor of Statutes Bureau works to correct problems, not to create problems. It would not have proposed a change that would have significantly altered the application of § 895.04(2) without addressing that subsection.

¶ 60. Based on this evidence, we hold that the legislature did not intend to make any substantive change to Wis. Stat. § 895.01 when it amended the statute in 1999 and organized it into outline form. We therefore uphold the body of case law that has been interpreting § 895.01(1) and Wis. Stat. § 895.04(2) harmoniously and conclude that a wrongful death claim does not survive the death of the claimant.

¶ 61. This holding applies equally to medical malpractice claims and non-medical malpractice claims. We decline to entertain arguments that the survival rule should be applied more expansively to medical malpractice wrongful death actions. Lornson argues that because this court has held that the succession rule in

Wis. Stat. § 895.04(2) does not apply to medical malpractice actions, *see Rineck,* 155 Wis. 2d at 671, this court should rely on its decision in *City of Milwaukee v. Boynton Cab Co.,* 201 Wis. 581, 231 N.W. 597 (1930), which was decided before the enactment of the relevant language in § 895.04(2), to find that a cause of action for wrongful death does not abate upon the death of the claimant in medical malpractice actions.

¶ 62.   Lornson's argument is without merit. First, *Boynton* is not applicable because it involved a worker's compensation statute that specifically allowed the widow's wrongful death claim to be assigned. *See Boynton,* 201 Wis. at 588–89. This case involves no statute allowing for the assignment of Joseph Sanders' claim. Second, and more important, the entire premise for looking outside the provisions of Chapter 655 is to apply general provisions of law to medical malpractice actions when they complement the chapter and are not in conflict with it. To apply general provisions differently in medical malpractice actions would essentially create a whole new set of statutes governing medical malpractice.

¶ 63.   We also decline to entertain notions that the wrongful death claim could survive under other Wis. Stat. § 895.01(1) provisions, such as "damage to the person," § 895.01(1)(g), or "damage done to the property rights or interests of another," § 895.01(1)(h). This court rejected a widow's argument in *Kranz* that her claim should survive the death of the wrongdoer under the "damage done to the property rights or interests of another" provision. *Kranz,* 155 Wis. at 42. The court held that this provision did not apply and responded with the following: " '[F]or all damage done to the property rights or interests of another' meant for all damage done to the property rights or interests of the

deceased, and not to the property rights or interests of a relative or beneficiary named under the statute . . . ." *Id.* at 42–43.

¶ 64. The court in *Schmidt* held that a widow's wrongful death claim could not survive her death under the "or other damage to the person" provision. *Schmidt,* 99 Wis. at 303. The court stated:

> It will be observed that this action is not prosecuted to recover for damages to the person of the deceased [the husband]. As already stated, it can only be maintained for the recovery of such pecuniary loss as the widow sustained, and cannot, by the broadest latitude of construction, be held to fall under the clause "or other damage to the person . . . ."

*Id.*

¶ 65. In addition, the long line of cases interpreting the survivability of the wrongful death claim has never applied either of these survival provisions to preserve a wrongful death claim. To apply these general provisions when a more specific wrongful death provision exists in paragraph (o) would be contrary to the canon of statutory construction that where two conflicting statutes apply to the same subject, the more specific statute controls. *State v. Anthony D.B.,* 2000 WI 94, ¶ 11, 237 Wis. 2d 1, 614 N.W.2d 435.

¶ 66. Because Joseph Sanders' wrongful death claim does not survive his death, his estate's claim for damages for loss of society, companionship, and consortium of his wife and of her services of pecuniary value, together with medical, funeral, and burial expenses, must be dismissed. The case must be remanded to the circuit court for further proceedings on the separate claim of the estate of Janice M. Sanders. The circuit

court is authorized to permit an amendment of that claim to include Janice Sanders' medical, funeral, and burial expenses. *See Schwab v. Nelson,* 249 Wis. 563, 25 N.W.2d 445 (1946); *Hegel,* 218 Wis. at 335.

## D. Lornson's Constitutional Claims

¶ 67.   Lornson contends that any interpretation of Wis. Stat. § 655.007 that denies Lornson's claim as personal representative of Joseph Sanders' estate would render the statute unconstitutional. First, Lornson argues that Joseph Sanders' statutory right to recover damages for the death of his wife became a vested property right as of the date of his wife's death and, therefore, denial of Lornson's claim deprives Joseph Sanders and his estate of a vested property interest without due process of law. Second, Lornson argues that denial of Lornson's claim in her capacity as personal representative of Joseph Sanders' estate deprives Joseph Sanders of equal protection of the law.

¶ 68.   As we address these constitutional arguments, we begin "with the presumption that a statute is constitutional[,] and [we] will continue to preserve a statute's constitutionality if there is a reasonable basis for the exercise of legislative power." *Czapinski,* 236 Wis. 2d 316, ¶ 27. We uphold the constitutionality of Wis. Stat. § 655.007 and conclude that denial of Lornson's claim in her capacity as personal representative of Joseph Sanders' estate does not deprive Joseph Sanders or his estate of a vested property interest without due process of law. Contrary to Lornson's argument, Joseph Sanders did not acquire a vested property right in a wrongful death cause of action as of the date of Janice Sanders' death. A cause of action for

wrongful death is purely statutory. No right of recovery was recognized at common law. *Chang,* 182 Wis. 2d at 560:

> As the right is created by statute, the right to recover damages for wrongful death and the terms of the recovery are confined to what is specified in the statute, and the right to recover damages is limited to members of those groups, or classes, of beneficiaries listed in the statute.

*Id.* (internal citation omitted). As noted previously, a wrongful death cause of action has always abated upon the claimant's death and will continue to do so unless the legislature provides for its survival. *See Kranz,* 155 Wis. at 42. At the time of Janice Sanders' death, the statutory scheme did not allow Joseph Sanders' claim to survive his death. Thus, Joseph Sanders was not deprived of a vested property right.[9]

¶ 69.   We also conclude that Joseph Sanders and his estate were not deprived of equal protection of the law. We will "uphold a statute under an equal protection analysis [i]f a rational basis exists to support the classification, unless the statute impinges on a fundamental right or creates a classification based on a suspect criterion." *Czapinski,* 236 Wis. 2d 316, ¶ 27 (alteration in original) (internal quotations omitted).

---

[9] Lornson's reliance on *Martin v. Richards,* 192 Wis. 2d 156, 531 N.W.2d 70 (1995), for her proposition that a claimant has a vested property right in a wrongful death cause of action as of the date of death is misplaced. First, the *Martin* court did not involve a wrongful death cause of action or the survival statute (Wis. Stat. § 895.01). Second, the *Martin* court explicitly declined to address whether the plaintiff's right to damages was "vested" at the time of injury. *See id.* at 206 n.10.

We affirm the conclusion in *Czapinski* and *Strykowski* that Wis. Stat. ch. 655 does not deny any fundamental right. *Czapinski,* 236 Wis. 2d 316, ¶ 28; *Strykowski,* 81 Wis. 2d at 507.

¶ 70. Our interpretation of Wis. Stat. § 655.007 in conjunction with Wis. Stat. §§ 895.01(1)(o) and 895.04(2) does not create a classification based on a suspect criterion. "[A] suspect class is one that involves 'immutable personal characteristics or historical patterns of discrimination and political powerlessness.' " *Czapinski,* 236 Wis. 2d 316, ¶ 28 (quoting *Strykowski,* 81 Wis. 2d at 507). Lornson argues that our interpretation of Wis. Stat. § 655.007 creates two classes of wrongful death claimants: (1) those spouses who survived until the trial and entry of judgment on their causes of action and; (2) those who died prior to trial and entry of judgment. We hold that these different classes of claimants "do not have immutable personal characteristics and have not experienced a historical pattern of discrimination and political powerlessness." *See id.* Therefore, Wis. Stat. § 655.007 does not create a classification that would be based on a suspect criterion. *See id.; see also Ferdon v. Wis. Patients Comp. Fund,* 2005 WI 125, ¶ 65, 284 Wis. 2d 573, 701 N.W.2d 440. Because Wis. Stat. § 655.007 is not based on a fundamental right and does not involve a suspect class, we use the rational basis standard of review. *Czapinski,* 236 Wis. 2d 316, ¶ 28.

¶ 71. In applying rational basis review to equal protection challenges, we are "not concerned with the wisdom or correctness of the legislative determination." *Id.,* ¶ 29. Rather, we determine whether the legislature

relied on a reasonable basis in enacting the statute. A statute must meet five criteria of reasonableness.

(1) All classifications must be based upon substantial distinctions which make one class really different from another.

(2) The classification adopted must be germane to the purpose of the law.

(3) The classification must not be based upon existing circumstances only and must not be so constituted as to preclude addition to the numbers within a class.

(4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) The characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*Strykowski*, 81 Wis. 2d at 509 n.8.

¶ 72. In this case, Lornson is challenging our interpretation of Wis. Stat. § 655.007 in conjunction with Wis. Stat. §§ 895.01(1)(o) and 895.04(2), in which we conclude that an eligible claimant's wrongful death cause of action does not survive the claimant's death should the claimant die before judgment. A rational basis exists for the distinction between claimants who die before judgment and those who do not die before judgment. A wrongful death cause of action "belongs to the beneficiaries and is designed to compensate for the loss of the relational interest existing between the beneficiaries and the decedent." *Weiss v. Regent Props.,*

*Ltd.,* 118 Wis. 2d 225, 230, 346 N.W.2d 766 (1984). "One of the purposes of the statute is to compensate the survivors for the pecuniary benefits which they would have derived from the earning power of the decedent had he or she lived." *Id.* Thus, the rule that a wrongful death cause of action does not survive is reasonable. It allows the legislature to expand the scope of potential recovery to certain named beneficiaries, while ensuring that only those who actually survive and continue to suffer loss from the wrongful death are compensated. The legislature may have thought it unfair that a beneficiary who dies before judgment should be entitled to recover for wrongful death and thus limit recovery to the living beneficiaries. We acknowledge that in this case Wis. Stat. § 655.007 eliminates Lornson, in her capacity as an adult child, as an eligible claimant; however, as we held in *Czapinski,* classifications distinguishing between adult and minor children do not violate equal protection of the law. *Czapinski,* 236 Wis. 2d 316, ¶ 33.

¶ 73. Furthermore, we note that our interpretation of Wis. Stat. § 655.007 in conjunction with §§ 895.01(1)(o) and 895.04(2) has equal effect on all claimants, including spouses, who die before judgment.

¶ 74. We therefore find that the classifications of spouses who survive final judgment and spouses who do not survive final judgment are not arbitrary or irrational, but are based on reasonable criteria. Thus, Lornson's equal protection argument fails.

## IV. CONCLUSION

¶ 75. We hold that in wrongful death actions, an eligible claimant's cause of action does not survive the death of the claimant. Thus, Joseph Sanders' wrongful

death claim does not survive. In a non-medical malpractice wrongful death case, under Wis. Stat. § 895.04(2), a new cause of action is available to the next claimant in the statutory hierarchy. In a medical malpractice wrongful death case, eligible claimants under Wis. Stat. § 655.007 are not subject to a statutory hierarchy like claimants under Wis. Stat. § 895.04(2). However, in a medical malpractice wrongful death case, adult children of the deceased (like Lornson and Hoertsch) are not listed as eligible claimants and are therefore not eligible because of the exclusivity of Wis. Stat. § 655.007, as interpreted in *Czapinski*. We therefore affirm the decision of the circuit court that Lornson's claim in her capacity as personal representative of Joseph Sanders' estate should be dismissed with prejudice, and that Lornson's alternative claim in her capacity as adult child of Janice Sanders should also be dismissed with prejudice.

¶ 76.  In addition, we hold that our interpretation of Wis. Stat. § 655.007 in conjunction with Wis. Stat. §§ 895.01(1)(o) and 895.04(2) does not deprive Joseph Sanders or his estate of a vested property right without due process or violate equal protection of the law. We remand the case to the circuit court for further proceedings on the separate claim of the estate of Janice M. Sanders.

¶ 77.  These conclusions are consistent with the statutory framework promulgated by the legislature. As we stated in *Hegel* and shall state again, "Th[is] situation is one which might properly be directed to the attention of the legislature, but one in which this court is powerless to act." *Hegel*, 218 Wis. at 333.

*By the Court.*—The judgment of the circuit court is affirmed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

557

¶ 78. N. PATRICK CROOKS, J. (*concurring in part, dissenting in part*). I join only that part of the majority opinion which concludes that Holly Lornson and Kim Hoertsch cannot, in their individual capacities, bring claims for their mother's wrongful death because, under *Czapinski v. St. Francis Hospital, Inc.*, 2000 WI 80, ¶ 2, 236 Wis. 2d 316, 613 N.W.2d 120, adult children are not included in the list of eligible claimants in Wis. Stat. § 655.007. Majority op., ¶ 19. I write separately because I strongly disagree with the majority's conclusion that Holly Lornson and Kim Hoertsch, acting as personal representatives of the estate of Joseph Sanders, their father, cannot maintain the wrongful death claim that he had for the death of his spouse, their mother, Janice Sanders.

¶ 79.   Under Wis. Stat. § 655.007, Joseph Sanders was eligible to bring a claim for Janice Sanders' wrongful death due to medical malpractice. Section 655.007 states:

> On and after July 24, 1975, any patient or the patient's representative having a claim or any spouse, parent, minor sibling or child of the patient having a derivative claim for injury or death on account of malpractice is subject to this chapter.

Among the various statutory provisions found in Chapter 655, none describe what happens to a wrongful death claim for medical malpractice after the death of an eligible claimant. As this court stated in *Storm v. Legion Insurance Co.*, 2003 WI 120, ¶ 34, 265 Wis. 2d 169, 665 N.W.2d 353: "Chapter 655 is not exclusive in the sense that it is a *comprehensive* set of procedural rules for medical malpractice claims." Rather, numerous other statutes outside of Chapter 655 also apply, including civil procedure and discovery statutes. *Id.* As

we stated in *Stappas v. Kagan,* 109 Wis. 2d 528, 530, 326 N.W.2d 757 (1982), "When Chapter 655 is silent on an issue, the law applicable to civil actions governs."

¶ 80.  It is helpful, then, to examine Chapter 877 of Wisconsin's Probate Code, in order to determine the authority of personal representatives to continue an action for the estate of an eligible claimant upon the death of the claimant. Wisconsin Stat. § 877.01 makes direct reference to Chapter 895, providing:

> If a cause of action survives under ch. 895, a personal representative may maintain an action on the cause of action against the wrongdoer in every case in which the decedent could, if living, maintain the action and, after the wrongdoer's death, against the wrongdoer's personal representative, except that this section shall not extend to actions for slander or libel.

The majority opinion does not claim that § 877.01 is ambiguous, but disallows the personal representatives' wrongful death claim here chiefly because the decedent's adult children are his estate's personal representatives. Majority op., ¶ 75.

¶ 81.  It seems clear based on the language of Wis. Stat. § 895.01(1)(o) that the claim for Janice Sanders' wrongful death survived. That section provides that among causes of action that survive are *"[c]auses of action for wrongful death,* which shall survive the death of the wrongdoer whether or not the death of the wrongdoer occurred before or after the death of the injured person." (Emphasis added.)

¶ 82.  I strongly agree with the personal representatives' position that Wis. Stat. § 895.01(1)(o) unambiguously states that a cause of action for wrongful death survives the death of the claimant, as well as the death of the wrongdoer. Majority op., ¶ 33. Since the

559

language of § 895.01(1)(o) is unambiguous, we should not consult extrinsic sources of interpretation, such as legislative history. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. We give statutory language its "common, ordinary, and accepted meaning," while also looking at the context and the structure of the statute in which the operative language appears. *Id.,* ¶¶ 45–46.

¶ 83. The personal representatives correctly point out that, in Wis. Stat. § 895.01(1)(o), the phrase that follows the comma—"which shall survive the death of the wrongdoer whether or not the death of the wrongdoer occurred before or after the death of the injured person"—is a nonrestrictive, relative pronoun clause, meaning that the phrase about the death of the wrong-doer provides additional, but not essential, information about the phrase it modifies. Majority op., ¶ 33. I whole-heartedly agree that in accord with § 895.01(1)(o), all causes of action for wrongful death survive, regardless of the death of the wrongdoer or the death of the claimant.

¶ 84. The majority relies on five "pieces of evidence" in claiming that the legislature made a substantive change to Wis. Stat. § 895.01(1)(o), and did not intend to do so, when it amended the statutes in 1999. Majority op., ¶ 54. The majority opinion then concludes that a wrongful death claim does not survive the death of the claimant. Majority op., ¶ 60. The majority opinion especially emphasizes the fact that the bill that led to 1999 Wis. Act 85 is a Revisor's Correction Bill. Majority op., ¶ 57. The majority states that the revisor rarely makes any substantive change in the law, but provides no authority to support such a claim. *Id.* Wisconsin Stat. § 13.93(2)(j) states in relevant part that the revisor of statutes shall, "[i]n cooperation with the

law revision committee, systematically examine and identify for revision by the legislature the statutes and session laws to *eliminate* defects, anachronisms, *conflicts, ambiguities,* and unconstitutional or obsolete provisions." (Emphasis added.) The *State of Wisconsin 2005–2006 Blue Book* describes the responsibilities of the revisor of statutes bureau as follows:

> The bureau prepares revisor's corrections bills to correct errors or resolve conflicts arising from the enactment of laws. It reviews attorney general's opinions, federal district and appellate court decisions, and state appellate or supreme court decisions that declare a Wisconsin statute or session law to be ambiguous, in conflict with other laws, anachronistic, unconstitutional, or otherwise in need of revision.

*State of Wisconsin 2005–2006 Blue Book* 303 (Lawrence S. Barish, ed. 2005). These responsibilities are significant, despite the majority's assertion that the revisor's duties are "mainly ministerial and editorial. . . ." Majority op., ¶ 55. Bills submitted to the legislature by the revisor of statutes and enacted into law "nevertheless are acts of the legislature, and where there is no ambiguity such acts must be applied as they read. . . ." *Dovi v. Dovi,* 245 Wis. 50, 53, 13 N.W.2d 585 (1944).

¶ 85.  The majority opinion states that the 1999 amendment to Wis. Stat. § 895.01(1)(o) through 1999 Wis. Act 85, § 171 rendered the wrongful death survival provision ambiguous and in conflict with other statutory sections. I strongly disagree. The duty of the revisor of statutes is to eliminate conflicts and ambiguities, not to create them. The insertion of a comma and the word "which" into § 895.01(1)(o) made it clear that causes of action for wrongful death survive. It makes no difference whether the claimant or the wrongdoer dies; the wrongful death action survives such death.

¶ 86.   The majority opinion examines Wis. Stat. § 895.04(2) and claims to find ambiguity in and conflict with § 895.01(1)(o), because of a hierarchy of eligible claimants, through an examination of legislative history. *See* Majority op., ¶¶ 37–42. Under *Kalal,* since the plain meaning of Wis. Stat. §§ 895.01(1)(o) and 877.01 are evident, and since the daughters of Joseph Sanders are not claimants in their individual capacities, but as personal representatives of their father's estate, § 895.04(2) is not relevant here, nor is the supposed legislative history. Furthermore, the majority's reliance on *Eleason v. Western Casualty & Surety Co.,* 254 Wis. 134, 139, 35 N.W.2d 301 (1948) is inapposite because that case involved children taking over a wrongful death claim as individual claimants, not as the personal representatives of the estate of the original litigant, as in the present case. Majority op., ¶ 39.

¶ 87.   In *Ferdon v. Wisconsin Patients Compensation Fund,* 2005, WI 125, ¶¶ 89, 91, 284 Wis. 2d 573, 701 N.W.2d 440, we discussed the legislative objectives involved in the enactment of Chapter 655:

> The primary, overall legislative objective is to ensure the quality of health care for the people of Wisconsin. The legislature obviously did not intend to reach this objective by shielding negligent health care providers from responsibility for their negligent actions. After all, "[i]t is a major contradiction to legislate for quality health care on one hand, while on the other hand, in the same statute, to reward negligent health care providers."
>
> . . . .
>
> Legislative Objective #1: Ensure adequate compensation for victims of medical malpractice with meritorious injury claims. The legislature retained the tort system as a means of identifying health care providers

who are practicing below the required due care standards and as a means of deterring them and other health care providers from negligent practices. The legislature obviously considers noneconomic injuries to be real injuries for which plaintiffs should be compensated in appropriate cases.

(quoting *Farley v. Engelken,* 740 P.2d 1058, 1067 (Kan. 1987)(footnotes omitted). These legislative objectives are frustrated by the approach advocated by the majority, which would deny the estate of Joseph Sanders the opportunity to establish his claim of medical malpractice. The result is that those claimed to have been negligent will be shielded from responsibility for any negligent actions.

¶ 88.   For the reasons stated herein, I respectfully concur in part and dissent in part.

¶ 89.   I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this concurrence/dissent.