# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:      2020AP202

†Petition for Review filed.

Complete Title of Case:

> **ESTATE OF ANNE OROS,**
>
>     **PLAINTIFF,**
>
> **KIM M. ANDRUSS,**
>
>     **PLAINTIFF-APPELLANT,**
>
> **THOMAS E. PRICE M.D., SECRETARY, DEPARTMENT OF HEALTH & HUMAN SERVICES,**
>
>     **INVOLUNTARY-PLAINTIFF,**
>
>     **V.**
>
> **DIVINE SAVIOR HEALTHCARE INC. D/B/A TIVOLI AT DIVINE SAVIOR HEALTHCARE,**
>
>     **DEFENDANT-RESPONDENT, †**
>
> **PROASSURANCE CASUALTY COMPANY,**
>
>     **DEFENDANT,**
>
> **DEAN HEALTH PLAN INC.,**
>
>     **INTERVENOR.**

Opinion Filed:      December 10, 2020
Oral Argument:      October 23, 2020

| JUDGES: | Blanchard, Kloppenburg, and Nashold, JJ. |
|---|---|

Appellant
ATTORNEYS:      On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Drew J. De Vinney* of *Martin Law Office, S.C.*, Madison.

Respondent
ATTORNEYS:      On behalf of the defendants-respondents, the cause was submitted on the brief of *Samuel J. Leib* and *Brenden M. Leib* of *Leib Knott Gaynor LLC*, Milwaukee.

COURT OF APPEALS
DECISION
DATED AND FILED

December 10, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP202**

STATE OF WISCONSIN

Cir. Ct. No. **2018CV100**

IN COURT OF APPEALS

---

ESTATE OF ANNE OROS,

PLAINTIFF,

KIM M. ANDRUSS,

PLAINTIFF-APPELLANT,

THOMAS E. PRICE M.D., SECRETARY,
DEPARTMENT OF HEALTH AND HUMAN SERVICES,

INVOLUNTARY-PLAINTIFF,

V.

DIVINE SAVIOR HEALTHCARE INC. D/B/A TIVOLI
AT DIVINE SAVIOR HEALTHCARE,

DEFENDANT-RESPONDENT,

PROASSURANCE CASUALTY COMPANY,

DEFENDANT,

**DEAN HEALTH PLAN INC.,**

   **INTERVENOR.**

---

APPEAL from an order of the circuit court for Columbia County: W. ANDREW VOIGT, Judge. *Reversed.*

Before Blanchard, Kloppenburg, and Nashold, JJ.

¶1     BLANCHARD, J. Kim Andruss appeals a circuit court order dismissing her wrongful death claim against Divine Savior Healthcare, Inc. (the Corporation). Andruss alleges that her mother, Anne Oros, suffered fatal injuries as a result of negligence by staff of a community-based residential facility (the CBRF) operated by the Corporation when Oros resided there. The circuit court dismissed Andruss's claim against the Corporation on the ground that the CBRF was one of three facilities that the Corporation operated on the same campus—the other two being a hospital and a nursing home—and that this meant that the Corporation was a health care provider as defined in WIS. STAT. § 655.002(1) (2017-18).[1]

¶2     Explaining briefly, Chapter 655 governs medical practice claims against health care providers and WIS. STAT. § 655.002 consists of an exclusive list of persons and entities whose activities as health care providers are subject to medical malpractice law. *See* § 655.002(1) (exclusive list of mandatory Chapter

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

655 health care providers); § 655.002(2) (exclusive list of "optional" participants).[2] Further, there is no dispute that Andruss, as an adult child of the deceased, cannot pursue a wrongful death claim based on activities of a health care provider identified in § 655.002(1). *See Czapinski v. St. Francis Hospital, Inc.*, 2000 WI 80, ¶2, 236 Wis. 2d 316, 613 N.W.2d 120 (the claimants entitled to bring a wrongful death suit for medical malpractice under Chapter 655 are only those enumerated in WIS. STAT. § 655.007, which does not include adult children of the deceased). Under the circuit court's interpretation of § 655.002(1), the Corporation is a mandatory Chapter 655 health care provider. On that basis, the court determined that Andruss lacks standing to bring the wrongful death action.

¶3 We agree with Andruss that Chapter 655 does not apply here, because the operative complaint is based exclusively on the Corporation's operation of the CBRF, which did not constitute activities of a mandatory health care provider under WIS. STAT. § 655.002(1). It is immaterial that separate hospital or nursing home operations of the Corporation constituted Chapter 655 health care provider activities. Accordingly, we reverse the order dismissing Andruss's wrongful death claim.

---

[2] *See also* WIS. STAT. § 655.001(8) ("[h]ealth care provider" under Chapter 655 is "a person to whom this chapter applies under s. 655.002(1) or a person who elects to be subject to this chapter under s. 655.002(2)"); WIS. STAT. § 655.006(1)(a) (starting on July 24, 1975, "every patient, every patient's representative and every health care provider shall be conclusively presumed to have accepted to be bound by this chapter"); WIS. STAT. § 655.007 (starting same date, all claimants "having a derivative claim for injury or death on account of malpractice is subject to this chapter").

The appeal involves only the issue of whether the Corporation may be sued for its activities as a mandatory participant under WIS. STAT. § 655.002(1); the Corporation makes no argument under the "optional participation" aspect of § 655.002(2). Therefore in our discussion we refer to § 655.002(1).

**BACKGROUND**

¶4 We begin with a brief overview of the background. In an initial complaint, Andruss based a wrongful death claim on the alleged negligent conduct of the Corporation in operating two separate facilities in Portage, Wisconsin: a CBRF and a nursing home. The circuit court made a preliminary ruling that Andruss lacked standing to pursue this claim under *Czapinski* and Chapter 655. But the court gave Andruss a chance to amend the allegations to attempt to eliminate this obstacle. In an amended complaint, Andruss narrowed her allegations to involve only the Corporation's operation of the CBRF, dropping allegations of negligence by staff of the nursing home. Andruss maintained that this resolved the only potential standing problem under Chapter 655. The circuit court disagreed, concluding that narrowing the scope of the allegations did not solve the Chapter 655 standing problem and on this basis dismissed the wrongful death claim.

¶5 With that as the overview, we briefly address the nature of the parties. There are two plaintiffs. One is Andruss, suing in her individual capacity as Oros's adult daughter and pursuing a wrongful death claim based on allegations of negligence. *See* WIS. STAT. §§ 895.03, 895.04(2). This statutory cause of action would entitle Andruss to seek damages to compensate her for any damages that she personally suffered as a result of Oros's death. *See* § 895.04(4).[3] The

---

[3] Putting to one side the Chapter 655 issue that we resolve in this appeal, the Corporation does not dispute that the legislature has established in WIS. STAT. § 893.555 that wrongful death actions may generally be maintained against long-term care providers, including CBRFs. *See* § 893.555(1)(a)3. (defining long-term care providers to include CBRFs); § 893.555(6) (addressing damages limits in wrongful death actions against long-term care providers).

other plaintiff is the Estate, which pursues a survival action based on negligence claims, with Andruss acting in the capacity of personal representative. *See* WIS. STAT. § 895.01(1)(am) (authorizing statutory survival actions "[i]n addition to the causes of action that survive at common law"). Liability on these negligence claims would entitle the Estate to seek to recover Oros's damages during Oros's life that allegedly resulted from negligence. *See* § 895.01(1)(am)7. (survival actions include causes of action for "other damage to the person"). Bearing those distinctions in mind, the Chapter 655 standing issue here involves only Andruss's wrongful death claim, not the Estate's survival claims. Separately, parties to this suit include an insurer of the Corporation and the then-secretary of the federal Department of Health and Human Services, but no party suggests that there are separate issues in this appeal that involve either of these parties.

¶6 Turning to the nature of the CBRF, it functioned as one division of the Corporation. The Corporation held the CBRF out to the public under the "doing business as" name Tivoli At Divine Savior Healthcare. Sometimes referred to as an assisted living facility, it met the statutory definition of a CBRF.[4] The Corporation had it individually licensed as a CBRF by the Division of Quality

---

[4] WISCONSIN STAT. § 50.01(1g) provides:

> "Community-based residential facility" means a place where 5 or more adults who are not related to the operator or administrator and who do not require care above intermediate level nursing care reside and receive care, treatment or services that are above the level of room and board but that include no more than 3 hours of nursing care per week per resident.

Section 50.01(1g) goes on to exclude various entities from the CBRF definition but it is undisputed that no exclusion is pertinent here. *See* § 50.01(1g)(a)-(i).

Assurance of the state Department of Health Services, with a maximum capacity of 40.

¶7 Andruss alleged in the initial complaint that Oros resided at separate times in the CBRF and in the nursing home that the Corporation also operated. The Corporation obtained an individual license for the nursing home as an 83-bed skilled care nursing home and, like the CBRF, the nursing home was held out by the Corporation under the "doing business as" name Tivoli At Divine Savior Healthcare. Andruss alleged that Oros fell multiple times and suffered bodily injury while residing in each facility. More specifically, the initial complaint alleged that Oros fell while residing in the CBRF during specific periods in 2015 and early 2016 and also alleged that she fell while residing in the nursing home on different dates in late 2015 and early 2016. It further alleged that Oros fell while residing in the CBRF in February 2016 and died as a result in May 2016.

¶8 The Corporation moved for an order that Chapter 655 applies to Andruss's individual wrongful death claim, which would result in dismissal of that claim under *Czapinski*.

¶9 Expanding on our explanation of Chapter 655, WIS. STAT. § 655.002(1) contains an exclusive list of persons and entities defined to be mandatory Chapter 655 health care providers, with definitions that sometimes include reference to particular activities or relationships among persons or entities.[5] This aims to fulfill the purpose of Chapter 655 to regulate the field of

---

[5] While not the focus of any argument on appeal, we note for context that WIS. STAT. § 655.005 addresses employees of health care providers and that WIS. STAT. § 655.003 specifies health care providers to whom Chapter 655 does not apply.

medical malpractice claims, which includes the establishment and operation of the patients and families compensation fund. *See **McEvoy v. Group Health Coop. of Eau Claire***, 213 Wis. 2d 507, 529-30, 570 N.W.2d 397 (1997). However, Chapter 655 regulation is limited to those "claims made against individual health care providers and entities providing health care services through their employees." ***Id.*** at 528; *see also **id.*** at 528-31 (allegations of bad faith against health maintenance organization for denying reimbursement for out-of-network care fell outside the scope of Chapter 655 because these were acts of an insurer, not acts of alleged "medical malpractice" and "the language of ch. 655 consistently expresses the legislative intent that the chapter applies only to medical malpractice claims").

¶10     The parties agree that the following are the mandatory health care provider categories in Chapter 655 that are most pertinent to Andruss's claim against the Corporation:

> (h)  A hospital, as defined in s. 50.33(2)(a) and (c), that operates in this state.
>
> (i)  An entity operated in this state that is an affiliate of a hospital and that provides diagnosis or treatment of, or care for, patients of the hospital.
>
> (j) A nursing home, as defined in s. 50.01(3), whose operations are combined as a single entity with a hospital described in par. (h), whether or not the nursing home operations are physically separate from the hospital operations.

WIS. STAT. § 655.002(1)(h), (i), (j).[6]

---

[6]  Regarding the references in WIS. STAT. § 655.002(1) to definitions in Chapter 50, this chapter addresses licensure of such facilities as CBRFs, nursing homes, and hospitals. *See, e.g.*, WIS. STAT. §§ 50.03 and 50.32.

¶11 The Corporation made two alternative arguments in support of dismissal of Andruss's claim, both of which it now renews on appeal. The first we call "the conglomerate argument": the Corporation operated a "conglomerate" of health care activities, each component of which was subject to Chapter 655. This argument depends in part on the fact that, in addition to the CBRF and the nursing home, the Corporation during the pertinent time period also operated a hospital, which was located on the same campus as the CBRF and the nursing home. The Corporation individually licensed the hospital as a 73-bed general acute hospital and gave it the "doing business as" name Divine Savior Hospital. The conglomerate argument is that, even if the CBRF was not itself listed as a Chapter 655 health care provider, it was one part of a "conglomerate" formed with the hospital (a Chapter 655 health care provider under WIS. STAT. § 655.002(1)(h)) and the nursing home, "whose operations are combined as a single entity with a hospital" (a Chapter 655 health care provider under § 655.002(1)(j)). As a result, the argument proceeds, this "conglomerate," including its CBRF operations, constituted a unified Chapter 655 health care provider.

¶12 We call the Corporation's alternative argument "the hybrid-allegations argument." The argument is that, even if the CBRF was not itself a Chapter 655 health care provider or even part of one, Chapter 655 nevertheless applied because the allegations in the initial complaint against the CBRF and the nursing home were "inseparable," and the nursing home was a Chapter 655 health care provider under WIS. STAT. § 655.002(1)(j).

¶13 In response, Andruss did not dispute that her wrongful death claim must be dismissed under *Czapinski* if the Corporation is a Chapter 655 health care provider. However, she took the position that, for various reasons, Chapter 655 did not apply to her claim in the initial complaint.

¶14     The circuit court indicated that it was inclined to grant the Corporation's motion by ruling that Chapter 655 applied to Andruss's claim in the initial complaint, based on the Corporation's hybrid-allegations argument. The court expressed the view that, while the CBRF itself was not a Chapter 655 health care provider for purposes of this case, dismissal was nevertheless required because the nursing home was a Chapter 655 health care provider under WIS. STAT. § 655.002(1)(j) and the initial complaint "intermingl[ed]" allegations involving the CBRF and the nursing home.

¶15     However, at the conclusion of the hearing, the circuit court permitted Andruss to amend the complaint to drop allegations involving the Corporation's actions in the nursing home, in case the court might decide that this fixed the problem. Accordingly, Andruss filed an amended complaint dropping all allegations involving the nursing home and retaining allegations involving only the CBRF and moved for reconsideration. Given that the wrongful death claim would now be limited to alleged negligence through the Corporation's operation of the CBRF, which Andruss contended did not constitute activities of a Chapter 655 health care provider, she argued that Chapter 655 does not apply to the wrongful death claim. The Corporation opposed the motion for reconsideration based on its conglomerate and hybrid-allegations arguments.

¶16     The circuit court denied Andruss's motion for reconsideration, granted the Corporation's motion for the application of Chapter 655, and on that basis dismissed Andruss's wrongful death claim. The court's reasoning appeared to approximate the Corporation's conglomerate argument. The court concluded that Andruss lacks "an independent way to make a claim against a non [Chapter] 655 entity." This is so, the court ruled, because the CBRF functioned as a mere "doing business as" division of the Corporation and therefore the only entity that

Andruss can sue is the Corporation, which the court ruled is subject to Chapter 655. Andruss appeals.

## DISCUSSION

¶17     We review the circuit court's decision to grant the Corporation's motion to dismiss Andruss's claims on the ground that she cannot assert a claim upon which relief can be granted. This presents an issue of law that we review de novo. *Lornson v. Siddiqui*, 2007 WI 92, ¶13, 302 Wis. 2d 519, 735 N.W.2d 55. We assume the truth of the allegations in the amended complaint and all reasonable inferences arising from the allegations. *See id.* In order to decide whether Andruss has asserted claims upon which relief can be granted we interpret and apply statutory provisions, which also presents an issue of law reviewed de novo. *See id.*, ¶14.

¶18     More specifically, as our supreme court has explained:

> "[S]tatutory interpretation 'begins with the language of the statute.'" *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). If the meaning of the language is plain, our inquiry ordinarily ends. *Id.* We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* Context and structure are also important to meaning. *Id.*, ¶46. "Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.* If this inquiry "yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.* (quoted source omitted). If the language is unambiguous, then we need not "consult extrinsic sources of interpretation, such as legislative history." *Id.*

*Milwaukee Dist. Council 48 v. Milwaukee Cnty.*, 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153 (alteration in original).

¶19 The Corporation conceded at oral argument before us that if Andruss's claim were based exclusively on activities of a "freestanding CBRF"—which we take to mean one not affiliated in any manner with a mandatory health care provider as defined in WIS. STAT. § 655.002(1)—then Chapter 655 would pose no obstacle to the claim.[7] We consider this to be a well-advised concession. None of the health care providers listed in § 655.002(1), even when one takes into account the activities and relationships described in some categories, includes a standalone CBRF, as defined in WIS. STAT. § 50.01(1g).[8]

---

[7] There is at least tension, if not outright contradiction, between this concession and one of the Corporation's arguments that we address below, namely, that "the distinction between nursing home and CBRF is without a difference as it pertains to Chapter 655." We explain below why we reject this particular argument and deem the oral argument concession to be well advised.

[8] The following are all of the WIS. STAT. § 655.002(1) health care provider categories that describe an organization or entity, as opposed to a job title such as "physician," and none describes a CBRF or the specific activities of a CBRF:

> (d) A partnership comprised of physicians or nurse anesthetists and organized and operated in this state for the primary purpose of providing the medical services of physicians or nurse anesthetists.
>
> (e) A corporation organized and operated in this state for the primary purpose of providing the medical services of physicians or nurse anesthetists.
>
> (em) Any organization or enterprise not specified under par. (d) or (e) that is organized and operated in this state for the primary purpose of providing the medical services of physicians or nurse anesthetists.

(continued)

¶20 Nevertheless, the Corporation contends, the CBRF is subject to Chapter 655 in the context of Andruss's wrongful death claim based on the conglomerate argument and the hybrid-allegations argument, which we address in turn.

## I. THE CONGLOMERATE ARGUMENT

¶21 As we now explain in more detail, we conclude that the premises of the Corporation's conglomerate argument are largely uncontested but that the Corporation leaps from these premises to an untenable conclusion that contradicts the pertinent specific terms of Chapter 655. The Corporation concedes, as it must, that it is liable as a general matter for negligence by staff of its CBRF division. But we conclude that it improperly attempts to insert a "conglomerate of care" definition into the unambiguous pertinent language of WIS. STAT. § 655.002(1), to

---

(f) A cooperative health care association organized under s. 185.981 that operates nonprofit health care plans in this state and that directly provides services through salaried employees in its own facility.

(g) An ambulatory surgery center that operates in this state.

(h) A hospital, as defined in s. 50.33(2)(a) and (c), that operates in this state.

(i) An entity operated in this state that is an affiliate of a hospital and that provides diagnosis or treatment of, or care for, patients of the hospital.

(j) A nursing home, as defined in s. 50.01(3), whose operations are combined as a single entity with a hospital described in par. (h), whether or not the nursing home operations are physically separate from the hospital operations.

Sec. 655.002(1)(d)-(j).

argue that such liability means that the Corporation-as-conglomerate is a health care provider subject to Chapter 655.

¶22    The conglomerate argument starts from the premise that, during the time period alleged in the amended complaint, the Corporation qualified as a Chapter 655 health care provider in two ways:  it operated the hospital, which qualified under WIS. STAT. § 655.002(1)(h) when the hospital provided health care services; and it operated the nursing home, which was "combined as a single entity with a hospital" and therefore the nursing home fell within the § 655.002(1)(j) definition when it provided health care services.  Andruss does not dispute either part of this premise.  She does not dispute that, if Oros were alleging negligence in the provision of health care services by the hospital, those services would have qualified as Chapter 655 activities under § 655.002(1)(h).  Nor does she dispute that, if Oros were alleging negligence in the provision of health care services by the nursing home, those services may have qualified as Chapter 655 activities, to the extent that the nursing home could be said to have been "combined as a single entity with a hospital," under § 655.002(1)(j).[9]

¶23    For its next premise, the Corporation points out that the CBRF "cannot be a defendant in this action," because the CBRF has no legal identity separate from the Corporation that operates it.  This is also not disputed.  Andruss could not sue the CBRF as a separate entity from the Corporation, because the CBRF was merely one division of the Corporation's operations, bearing a "doing

---

[9] For reasons explained in the text, we need not resolve the specific issue whether, under a proper interpretation of WIS. STAT. § 655.002(1)(j), various activities of the nursing home here could have been subject to Chapter 655 for purposes of any litigation on the ground that the nursing home was "combined as a single entity with a hospital."

business as" name. *See **Paul Davis Restoration of S.E. Wis., Inc. v. Paul Davis Restoration of Ne. Wis.**, 2013 WI 49, ¶¶23-24, 347 Wis. 2d 614, 831 N.W.2d 413 (stating that a legal entity's "'doing business as'" name is "'simply another way to refer'" to the legal entity (quoted source omitted)).

¶24 From these premises, the Corporation argues, Andruss must be barred from making a wrongful death claim against the Corporation as a hospital-nursing home-CBRF "conglomerate," because such a "conglomerate" would be a single Chapter 655 health care provider for all health care services provided by any of its three divisions. The Corporation's position is that, because it operates a hospital, any health care services that the Corporation provides through any of its facilities or divisions are part of a "conglomerate" of health care services and accordingly are subject to Chapter 655.

¶25 The problem with this argument is that Chapter 655 does not recognize anything resembling a "conglomerate" in any of the WIS. STAT. § 655.002(1) definitions of mandatory health care providers. To the contrary, § 655.002(1) identifies in precise terms particular persons and entities, at times limited to the context of particular activities performed by them, none of which includes an entity or organization of a "conglomerate" nature that includes the conduct of the CBRF staff at issue in the amended complaint here. Put simply, what matters to the analysis under § 655.002(1) is that the Corporation operates the CBRF and that the allegations here address Oros's care at the CBRF; it does not matter what *else* the Corporation operates.

¶26 The exclusive list of mandatory health care providers and activities in WIS. STAT. § 655.002(1) includes references to various types of entities, but "conglomerate" is not among them. One set of similarly worded provisions

identifies partnerships, corporations, and any other organizations or enterprises. Sec. 655.002(1)(d), (e), (em). However, in each instance the entity or enterprise must have been "organized and operated in this state for the primary purpose of providing the medical services of physicians or nurse anesthetists." *Id.* The Corporation does not attempt to argue that it meets any of these definitions.

¶27 The legislature used precise language in identifying Chapter 655 health care providers, showing an evident intent to draw clear lines. As Andruss notes, one notable example of clear line drawing is found in WIS. STAT. § 655.002(1)(h). This subpart includes two of the Chapter 50 definitions for "hospital," but it excludes a third definition—"related facilities such as outpatient facilities."[10]

¶28 Put differently, the exclusive WIS. STAT. § 655.002(1) list of mandatory health care providers does not include a category that consists of corporations that operate CBRFs while also operating hospitals or nursing homes. Here, *some* of the Corporation's operations (notably, health care services provided by the hospital to its patients) would have been subject to Chapter 655 under

---

[10] *Compare* WIS. STAT. § 655.002(1)(h) ("hospital, as defined in [WIS. STAT.] s. 50.33(2)(a) and (c)") *with* § 50.33(2)(a) ("any building, structure, institution or place devoted primarily to the maintenance and operation of facilities for the diagnosis, treatment of and medical or surgical care for 3 or more nonrelated … patients, suffering from illness, disease, injury or disability, whether physical or mental, and including pregnancy and regularly making available at least clinical laboratory services, and diagnostic X-ray services and treatment facilities for surgery, or obstetrical care, or other definitive medical treatment"), § 50.33(2)(b) ("related facilities such as outpatient facilities, nurses,' interns' and residents' quarters, training facilities and central service facilities operated in connection with hospitals"), *and* § 50.33(2)(c) ("'special hospitals' or those hospital facilities that provide a limited type of medical or surgical care, including orthopedic hospitals, children's hospitals, critical access hospitals, mental hospitals, psychiatric hospitals or maternity hospitals").

§ 655.002(1)(h), but that does not mean that *all* of the Corporation's operations were—such as care provided by the CBRF to Oros.

¶29    At oral argument, the Corporation attempted to suggest that its conglomerate argument is consistent with the definition in WIS. STAT. § 655.002(1)(i): "An entity operated in this state that is an affiliate of a hospital and that provides diagnosis or treatment of, or care for, patients of the hospital." The argument would be that the CBRF was an affiliate of the hospital that provided care for Oros while she was a patient of the hospital.[11]  However, when pressed to explain how Oros could be considered to be a patient of the hospital following her discharge from the hospital and her admission to the CBRF, counsel had no answer.  We conclude that the Corporation offers a baseless interpretation of the phrase "patients of the hospital" in § 655.002(1)(i).

¶30    As Andruss points out, under the logic of the Corporation's argument, if a corporation that operates a hospital is always subject to Chapter 655 for all of the corporation's health care operations, then there would be no need for the legislature to have included paragraphs (i) or (j) in WIS. STAT. § 655.002(1). "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *See State ex rel. Kalal*, 271 Wis. 2d 633, ¶46.

---

[11]  Andruss does not contest any of the following:  that Oros was a patient of the hospital at times when she was not residing in either the nursing home or the CBRF, although she had been discharged from the hospital before she resided in the CBRF; that the CBRF operated as an "affiliate of" the hospital operated by the Corporation; and that the CBRF provided its residents with "up to intermediate nursing care or basic care."  However, Andruss emphasizes that CBRFs generally operate "on the far low end of skill level as far as care," in contrast to the ordinary work of physicians and anesthetists.

¶31 Given our conclusion that the text of W*IS.* S*TAT.* § 655.002(1) plainly does not include CBRFs, the Corporation's conglomerate argument essentially amounts to a policy disagreement with the legislature as to where lines should be drawn to define mandatory health care providers under § 655.002(1). The legislature enacted Chapter 655 out of concern "about what it viewed as the increasing cost and possible decreasing availability of health care in Wisconsin." ***Wisconsin Patients Comp. Fund v. Wisconsin Health Care Liab. Ins. Plan***, 200 Wis. 2d 599, 607, 547 N.W.2d 578 (1996). Part of the legislature's response was to use § 655.002 to provide specific descriptions of mandatory and optional health care providers under Wisconsin's medical malpractice law. It has not elected to include CBRFs.

## II. THE HYBRID-ALLEGATIONS ARGUMENT

¶32 It is difficult to see what remains of the Corporation's hybrid-allegations argument now that Andruss has narrowed the scope of the amended complaint to address alleged liability of only CBRF staff. There appear to be two threads. First, the Corporation apparently means to suggest that, even having purportedly narrowed her allegations, Andruss would not in fact be able to limit her proof at trial to only that which is relevant to liability by the CBRF, or perhaps that a jury could not intelligibly distinguish between evidence regarding CBRF activities and evidence regarding non-CBRF activities for purposes of determining liability by the Corporation for its CBRF operation alone.[12] Second, the

---

[12] More precisely, this is the position that the Corporation has taken in its appellate briefing. But it retreated at oral argument. Pressed at oral argument to explain why Andruss cannot prove a CBRF-specific case at trial based on the evidence being too intertwined with nursing home activities, the Corporation acknowledged that it has no argument. But for the sake of completeness we briefly address the argument in the briefing.

Corporation argues, based on statutory interpretation, that "the distinction between nursing home and CBRF is without a difference as it pertains to Chapter 655." Neither subargument is well developed, but we address each in turn.

¶33     Regarding the suggestion of inextricably intertwined facts, the essence of Andruss's amended claim is that the Corporation, acting through the CBRF, was negligent in failing to sufficiently observe Oros and in failing to take steps to move her to a facility with a higher level of care. Andruss disavows an intent to attempt to assign liability to the Corporation based on its hospital or nursing home operations, and contends that she will prove at trial that Oros was "under the sole care" of the CBRF at times that create liability for the Corporation. For example, Andruss explains that her factual position at trial would be that, while Oros resided at different times in both the CBRF and the nursing home, the two facilities operated independently from each other, in "completely different silos," and that the only negligence alleged will be for the CBRF acts and omissions in regard to providing the "basic care services that are typical of a CBRF." In the face of these positions by Andruss, the Corporation fails to explain what would prevent Andruss from being able to present evidence at trial that could be intelligibly understood by a jury to focus on potential liability of the Corporation based exclusively on alleged failures in its CBRF operation. The trial has yet to be held, but the Corporation fails to provide a reason to think that the circuit court would not be able to make evidentiary rulings and give instructions that would properly allow a jury to determine liability of the Corporation, if any, based on its CBRF operation alone.

¶34     For its second subargument, the Corporation briefly suggests that the exclusive list of health care providers in WIS. STAT. § 655.002(1) must be interpreted in light of definitional provisions in WIS. STAT. § 50.01, with the result

that, for purposes of interpreting § 655.002(1)(j), CBRFs are equivalent to nursing homes. Explaining further, the Corporation points to the following definitions:

- WISCONSIN STAT. § 50.01(1m) provides in pertinent part: "'Facility' means a nursing home or community-based residential facility."

- WISCONSIN STAT. § 50.01(3) defines "nursing home" as follows:

> (3) "Nursing home" means a place where 5 or more persons who are not related to the operator or administrator reside, receive care or treatment and, because of their mental or physical condition, require access to 24-hour nursing services, including limited nursing care, intermediate level nursing care and skilled nursing services. "Nursing home" does not include any of the following:

> (c) A convent or facility owned or operated exclusively by and for members of a religious order that provides reception and care or treatment of an individual.

> (d) A hospice, as defined in s. 50.90(1), that directly provides inpatient care.

> (e) A residential care apartment complex.

¶35 The Corporation's arguments based on these two features of WIS. STAT. § 50.01 are both meritless. Starting with WIS. STAT. § 50.01(1m) and the definition of "facility," WIS. STAT. § 655.002(1) plainly does not lump together nursing homes and CBRFs as "facilities." First, there is the specific use of the phrase "nursing home" in § 655.002(1)(j) and no use of the term CBRF at any place in § 655.002(1). Second, the sole use of "facility" in § 655.002(1) occurs in § 655.002(1)(f), where it does not necessarily mean *either* nursing home *or* CBRF, and it certainly does not suggest a merger of the two concepts: "A cooperative health care association organized under [WIS. STAT. § ] 185.981 that operates nonprofit health care plans in this state and that directly provides services through salaried employees in its own *facility*." (Emphasis added.)

¶36     Turning to WIS. STAT. § 50.01(3), the Corporation suggests that "[t]he legislature could not have intended to except [the Corporation's] exposure for its CBRF activities from" Chapter 655 for two reasons: first, the exceptions in § 50.01(3)(c), (d), and (e) do not include CBRFs; and second, both the definition of nursing home in § 50.01(3) and the definition of CBRF in § 50.01(1g) include the phrase "receive care [or] treatment." Both parts of this argument fail because the legislature has unmistakably distinguished the two types of facilities. On the first point, the Corporation gives us no reason to conclude that the exclusions from the nursing home definition for religious order facilities, hospices, and residential care apartment complexes are intended to equate nursing homes and CBRFs for purposes of WIS. STAT. § 655.002(1). On the second point, there is a clear difference between the level of "care [or] treatment" reflected in the respective Chapter 50 definitions of nursing homes and CBRFs.

¶37     Indeed, under WIS. STAT. § 50.01(1g), CBRFs are prohibited from having residents who "require care above intermediate level nursing care," and instead residents are to "receive care, treatment or services that are above the level of room and board but that include no more than 3 hours of nursing care per week per resident." In contrast, under § 50.01(3), nursing homes residents "require access to 24-hour nursing services, including limited nursing care, intermediate level nursing care and skilled nursing services." *See Hacker v. DHSS*, 197 Wis. 2d 441, 454-59, 541 N.W.2d 766 (1995) (tracing the history of definitions of nursing homes and CBRFs in § 50.01 and the creation of the current "two-tiered scheme: facilities were now either nursing homes or CBRFs").

¶38     Finally, it is not clear to us where they might fit into the Corporation's other contentions, but at oral argument the Corporation highlighted the following allegations. According to the Corporation, Oros was "admitted to a

very special unit of the CBRF" for "patients with memory loss and Alzheimer's" disease and certified nursing assistants "on the floor were all certified in giving health care services." These allegations may have potential relevance on the merits of the wrongful death claim. However, whatever the Corporation means to suggest by highlighting these allegations, we do not understand how they support an argument for the application of Chapter 655 here. As with the Corporation's conglomerate argument, this seems to amount to a policy disagreement with the legislature regarding how mandatory health care providers should be defined under WIS. STAT. § 655.002(1). We conclude that any change in this area would have to come from the legislature, not the courts.

## CONCLUSION

¶39    For all these reasons, we reverse the order of the circuit court.

*By the Court*.—Order reversed.