# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2020AP202 |

| | |
|---|---|
| COMPLETE TITLE: | Kim M. Andruss,<br>       Plaintiff-Appellant,<br>Thomas E. Price M.D. , Secretary, Department of Health &<br>Human Services,<br>       Involuntary-Plaintiff,<br>Estate of Anne Oros,<br>       Plaintiff,<br>    v.<br>Divine Savior Healthcare Inc. d/b/a Tivoli at Divine<br>Savior Healthcare,<br>       Defendant-Respondent-Petitioner,<br>ProAssurance Casualty Company,<br>       Defendant,<br>Dean Health Plan Inc.,<br>       Intervenor. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 395 Wis. 2d 676,953 N.W.2d 914
PDC No: 2021 WI App 8 - Published

| | |
|---|---|
| OPINION FILED: | May 6, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 14, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Columbia |
| JUDGE: | Andrew W. Voigt |

JUSTICES:

ZIEGLER, C.J. delivered the majority opinion for a unanimous Court.

NOT PARTICIPATING:

ATTORNEYS:

    For the plaintiff-appellant there was a brief filed by Drew De Vinney and Martin Law Office, S.C. There was an oral argument by Drew De Vinney.

For the defendant-respondent-petitioner there were briefs filed by Samuel Leib. There was an oral argument by Samuel Leib and Leib, Knott, Gaynor, LLC.

An amicus curiae brief was filed on behalf of the Wisconsin Association for Justice by Scott Thompson and Gingras, Thomsen and Wachs LLP.

**2022 WI 27**

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2020AP202
(L.C. No. 2018CV100)

STATE OF WISCONSIN     :     IN SUPREME COURT

**Kim M. Andruss,**

     **Plaintiff-Appellant,**

**Thomas E. Price M.D. , Secretary, Department of Health & Human Services,**

     **Involuntary-Plaintiff,**

**Estate of Anne Oros,**

     **Plaintiff,**

     **v.**

**Divine Savior Healthcare Inc. d/b/a Tivoli at Divine Savior Healthcare,**

     **Defendant-Respondent-Petitioner,**

**ProAssurance Casualty Company,**

     **Defendant,**

**Dean Health Plan Inc.,**

     **Intervenor.**

**FILED**

**MAY 6, 2022**

Sheila T. Reiff
Clerk of Supreme Court

ZIEGLER, C.J., delivered the majority opinion for a unanimous court.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1    ANNETTE KINGSLAND ZIEGLER, C.J.    This is a review of a published decision of the court of appeals, Estate of Oros v. Divine Savior Healthcare, Inc., 2021 WI App 8, 395 Wis. 2d 676, 953 N.W.2d 914, reversing an order of the Columbia County circuit court[1] that dismissed the plaintiff, Kim Andruss's, wrongful death claim.    Andruss brought her claim on behalf of the estate of her mother, Anne Oros, and in Andruss's capacity as Oros's daughter.

¶2    Oros allegedly died as a result of negligence on the part of Divine Savior Healthcare, Inc., d/b/a Trivoli at Divine Savior Healthcare ("Divine Savior").    Divine Savior and ProAssurance Casualty Company, Divine Savior's insurer, (collectively, "the defendants") argue that Andruss cannot bring a wrongful death claim as an adult child of Oros.    According to the defendants, the liability protections given to certain healthcare providers under Chapter 655 bar Andruss's claim.

¶3    Divine Savior owns and operates a medical campus with a hospital, nursing home, and a community-based residential facility ("CBRF").    When Oros received the injuries at issue in this case, she was a resident of Divine Savior's CBRF.    The basis of Andruss's claim is alleged negligence on the part of the CBRF, and CBRFs, even ones that share common ownership with hospitals and nursing homes, fall outside the liability protections of Wis. Stat. Chapter 655 (2017-18).[2]    Dismissal

---

[1] The Honorable W. Andrew Voigt presided.

[2] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

under Chapter 655 of Andruss's wrongful death claim is not warranted. The court of appeals is affirmed.

I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶4 Oros was admitted as a resident of Divine Savior's CBRF in Portage, Wisconsin, in January 2015. At that time, Oros was 88 years old and was diagnosed as having Alzheimer's disease. On the same medical campus as the CBRF, Divine Savior owned and operated a hospital and a nursing home. At various points during the time period at issue, Oros received treatment at Divine Savior's hospital and nursing home.

¶5 Between April and December 2015, Oros had four falls at Divine Savior's CBRF. In April 2015, Oros fell and struck her head at the CBRF. She was taken to Divine Savior's hospital for observation and treatment. In June 2015, Oros fell again and hit her head at the CBRF. She was again taken to Divine Savior's hospital. In October 2015, Oros slipped and fell at the CBRF, and she was taken to Divine Savior's hospital. Andruss asserts that Divine Savior never informed Oros's primary care physician of these falls, nor did they consult with administrators, medical professionals, or Oros's family on the proper level of care Oros needed.

¶6 In December 2015, Oros fell again at the CBRF and fractured her wrist. She was taken to Divine Savior's hospital for surgery, and she was discharged over a week later to undergo rehabilitation at Divine Savior's nursing home. While at the nursing home, she fell twice. Also while at the nursing home, she was hospitalized for unrelated medical ailments.

¶7 In January 2016, Oros was transferred from the nursing home to the CBRF. Within a few days, in February 2016, Oros fell for a fifth time at the CBRF. No injuries were reported, and Oros was not taken to the hospital. Less than a week after this incident, Oros fell for a sixth time and hit her head. After being transported to the hospital, she was diagnosed with a subdural hematoma. In May 2016, Oros passed away while in hospice. At the time of each of Oros's six falls at the CBRF, she was not an admitted patient at either Divine Savior's hospital or its nursing home.

¶8 In March 2018, Andruss, on behalf of Oros's estate and as the adult child of Oros, brought negligence and wrongful death claims against the defendants in Columbia County circuit court. Andruss alleged that Divine Savior's employees at the nursing home and the CBRF failed to implement a proper plan of care, failed to provide adequate and timely treatment, failed to sufficiently monitor Oros, and provided medical care falling below the professional standard of care. Defendants filed an answer in May 2018.

¶9 Over a year passed, and in June 2019, the defendants filed a "Motion for the Application of Wisconsin Chapter 655." In the motion, the defendants asserted that "the application of Chapter 655 [to] this action . . . would result in the dismissal of [Andruss's] wrongful death claim." After briefing, the circuit court held a hearing on the motion in August 2019. The circuit court indicated that it believed Chapter 655 applied to Andruss's claims against Divine Savior's nursing home. While

4

the circuit court was "not convinced" that Chapter 655 applied to CBRFs generally, the circuit court reasoned that it "borders almost on nonsensical that different rules would apply to different parts of the same legal entity." Thus, the circuit court indicated that Chapter 655 applied to Divine Savior's CBRF as well as its nursing home. Upon a request from Andruss, the circuit court stated Andruss could file a motion to amend her complaint. The circuit court explained that the amendments could change its analysis on the defendants' motion. No order or judgment was entered after the August 2019 hearing.

¶10 In September 2019, Andruss filed a document entitled, "Motions for Leave to Amend the Complaint and for Reconsideration." Andruss attached an amended complaint that removed all claims brought against Divine Savior's nursing home. She argued that the wrongful death claim remaining against the CBRF was not barred under Chapter 655, and the circuit court should "reconsider" the analysis it provided at the August 2019 hearing.

¶11 In November 2019, the circuit court held a hearing on Andruss's motion to amend and for reconsideration. It noted its prior analysis that CBRFs were not "necessarily or obviously subject to [Chapter] 655," but reiterated that different divisions of the same entity cannot have different rules of medical malpractice liability. According to the circuit court, Chapter 655 must apply to the entire Divine Savior entity, including its CBRF. In January 2020, the circuit court entered an order granting the defendants' Motion for the Application of

5

Chapter 655, denying Andruss's motion for reconsideration, and dismissing the claims Andruss brought in her individual capacity.

¶12 Andruss appealed the circuit court's decision, and the court of appeals reversed. Estate of Oros, 395 Wis. 2d 676, ¶39. The court of appeals construed the defendants' Motion for the Application of Chapter 655 as a motion to dismiss for failure to state a claim. Id., ¶17. From there, the court of appeals reasoned that CBRFs were not covered by Chapter 655. Id., ¶19. Because Andruss brought her wrongful death claim against Divine Savior for its operation of a CBRF, the claim was not subject to Chapter 655, and dismissal was not warranted. Id., ¶¶21-38. According to the court of appeals, the result did not change simply because Divine Savior operated both a hospital and nursing home, nor did it change because Oros received care at both the nursing home and hospital prior to her death. Id.

¶13 The defendants filed a petition for review with this court, and in April 2021, the petition was granted.

## II. STANDARD OF REVIEW

¶14 The standard of review in this case requires clarification. The focus of this appeal is whether the circuit court properly granted the defendants' Motion for the Application of Chapter 655 and whether Andruss's wrongful death claim must be dismissed. The defendants argue that because Divine Savior owns and operates a hospital and nursing home at which Oros received care, and those facilities, according to the defendants, are covered by Chapter 655, Andruss cannot proceed

6

against Divine Savior's CBRF. But we are aware of no authority under Wisconsin civil procedure, statutes, or caselaw recognizing a "Motion for the Application of Chapter 655," or identifying it as an independent procedural device for dismissal of legal claims. See, e.g., Lornson v. Siddiqui, 2007 WI 92, 302 Wis. 2d 519, 735 N.W.2d 55 (affirming dismissal of claims barred by Chapter 655 under the standards for motions to dismiss for failure to state a claim). The court of appeals construed the defendants' motion as a motion to dismiss for failure to state a claim. Estate of Oros, 395 Wis. 2d 676, ¶17. On appeal, both Andruss and the defendants analyze the motion under the framework of a motion to dismiss. Here, the parties submitted evidence outside the record, and the motion cannot be reviewed as a motion to dismiss.

¶15 A motion to dismiss for failure to state a claim "tests the legal sufficiency of the complaint." DeBruin v. St. Patrick Congregation, 2012 WI 94, ¶11, 343 Wis. 2d 83, 816 N.W.2d 878. When reviewing a motion to dismiss, "we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom." Id. However, if "matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Wis. Stat. § 802.06(2)(b). In such instances, "all parties shall be given reasonable opportunity to present all material made pertinent to [a motion for summary judgment.]" Id.

¶16 Before the circuit court, the defendants submitted substantial record evidence that was neither mentioned nor

included in Andruss's original complaint or her amended complaint. For instance, the defendants submitted affidavits that described in detail Divine Savior's corporate structure, the nature of Oros's falls, how she was transported to Divine Savior's hospital on several occasions, and how she was moved between Divine Savior's CBRF, nursing home, and hospital on the same campus. Those facts were neither stated nor referenced in either Andruss's complaint or her amended complaint. The original complaint alleged injuries and health care services provided only at the nursing home and CBRF, while the amended complaint focused solely on injuries and services at the CBRF. Neither the complaint nor the amended complaint alleged that Divine Savior owned a hospital.

¶17 In response to the defendants' motion, Andruss cited to her own record evidence. She described how Divine Savior separated the nursing home and CBRF into different divisions, and the divisions had separate patients, admissions, and care plans. Andruss also explained the timeline of her mother's falls and her movements to different facilities on Divine Savior's campus. This information was also not included in either the complaint or the amended complaint.

¶18 The circuit court received this evidence and explicitly relied on it in its decision. A central aspect of the circuit court's reasoning provided in August, 2019 was that, according to the circuit court, it would be "nonsensical" to apply "different rules" to "the same legal entity." The circuit court reiterated this same reasoning when it reviewed Andruss's

8

motion for reconsideration in November 2019. At that time, the circuit court noted that Oros "was back and forth among these entities," and questioned "how on earth do you parse" through the shifting service providers during a jury trial.

¶19 The defendants' Motion for the Application of Chapter 655 is best construed as a motion for summary judgment. The motion relied on facts not included in Andruss's complaints. It was filed over a year after the case began and over a year after the defendants answered Andruss's complaint. The circuit court did not exclude the record evidence cited by the defendants, but Andruss had the opportunity to present evidence in opposition to the defendants' motion.[3] See Wis. Stat. § 802.06(2)(b).

¶20 To facilitate effective and efficient appellate review, circuit courts must properly identify the motion that is before them and structure their analysis under the correct, applicable standard. The defendants' motion presented itself as a motion for summary judgment, and the circuit court should have recognized it as such when it granted the motion and explained its reasoning. See, e.g., Gauger v. Ludwig, 56 Wis. 2d 492, 496-97, 202 N.W.2d 233 (1972) (explaining that a motion to

---

[3] In addition, the motion cannot be construed as a motion for judgment on the pleadings, which motions test the sufficiency of the complaint with reference to any responsive pleading. See Southport Commons, LLC v. DOT, 2021 WI 52, ¶42, 397 Wis. 2d 362, 960 N.W.2d 17 (explaining the standard of review for motions for judgment on the pleadings). "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . ." Wis. Stat. § 802.06(3).

strike can be construed as a motion to dismiss in order to "put substance above form"); Schwab v. Timmons, 224 Wis. 2d 27, 34-35, 589 N.W.2d 1 (1999) (describing how a circuit court properly converted a motion to dismiss into a motion for summary judgment, despite labels given to the motion by parties). Alternatively, the circuit court should have directed the defendants to clarify under which type of dispositive motion they intended to proceed.

¶21 The parties on appeal and the court of appeals construed the defendants' motion as a motion to dismiss. This was incompatible with the nature of the motion and the circuit court's analysis. In fact, the court of appeals should have recognized this discrepancy when it analyzed Divine Savior's corporate structure, its ownership of a hospital, and the intertwining nature of care provided to Oros between Divine Savior's various facilities. Estate of Oros, 395 Wis. 2d 676, ¶¶21-38. A facial view of Andruss's complaints would have revealed that none of those facts were properly alleged. See Jamerson v. DCF, 2013 WI 7, ¶¶64-65, 345 Wis. 2d 205, 824 N.W.2d 822 (noting that in the proceedings below, an administrative law judge and the litigants labeled a motion in a manner that was not legally recognized and analyzing the motion on appeal under the proper standard).

¶22 Procedural posture matters. In many cases, it materially impacts the outcome of disputes.[4] When analyzing the defendants' Motion for the Application of Chapter 655, the circuit court and the court of appeals should have construed the motion as a motion for summary judgment, and we shall do so here.

¶23 "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." Racine County v. Oracular Milwaukee, Inc., 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88 (quotations omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). A party opposing summary judgment "'may not rest upon the mere allegations or denials of the pleadings' but instead, through affidavits or otherwise, 'must set forth specific facts showing

---

[4] The instant dispute would be easily resolved if analyzed as a motion to dismiss. Material facts supporting the CBRF's corporate ownership and the intermixing of care at Divine Savior's facilities, laying at the heart of the defendants' motion and the circuit court's analysis, were not alleged in the amended complaint. See Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693 ("[A] court cannot add facts in the process of construing a complaint" for a motion to dismiss); Wis. Stat. § 802.06(2)(b) (requiring conversion to a motion for summary judgment when relying on "matters outside of the pleadings").

that there is a genuine issue for trial.'" Oracular Milwaukee, 323 Wis. 2d 682, ¶26 (quoting Wis. Stat. § 802.08(3) (2007-08)).

¶24 This case also presents questions of statutory interpretation. "Interpretation of a statute is a question of law that we review de novo, although we benefit from the analyses of the circuit court and the court of appeals." Estate of Miller v. Storey, 2017 WI 99, ¶25, 378 Wis. 2d 358, 903 N.W.2d 759. "[S]tatutory interpretation begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry. Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations and quotations omitted). In addition, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46.

### III. ANALYSIS

¶25 The defendants argue that Andruss's wrongful death claim must be dismissed because it is brought against Divine Savior's CBRF. It is undisputed that Divine Savior owns and operates a hospital and a nursing home at which Oros received treatment prior to her death. Oros was transferred between the CBRF, the hospital, and the nursing home at various points to receive care for Oros's falls between April 2015, when Oros was

first admitted into Divine Savior's CBRF, and February 2016, when Oros fell and was diagnosed with a subdural hematoma.

¶26 When applicable, "Chapter 655 constitutes the exclusive procedure and remedy for medical malpractice in Wisconsin." Finnegan ex rel. Skoglind v. Wis. Patients Compensation Fund, 2003 WI 98, ¶22, 263 Wis. 2d 574, 666 N.W.2d 797. However, Chapter 655 applies only to a specifically defined list of health care providers. Wisconsin Stat. § 655.001(8) defines "health care provider" as "a person to whom this chapter applies under s. 655.002(1) or a person who elects to be subject to this chapter under s. 655.002(2)." Wisconsin Stat. § 655.002 lists service providers that "chapter [655] applies to," as well as a list of providers that "may elect . . . to be subject to [the] chapter."

¶27 An adult child cannot bring a wrongful death claim alleging medical malpractice on the part of a health care provider covered by Chapter 655. "The classification of claimants entitled to bring a wrongful death suit for medical malpractice [covered by Chapter 655] is limited to those enumerated in Wis. Stat. § 655.007." Czapinski v. St. Francis Hosp., Inc., 2000 WI 80, ¶2, 236 Wis. 2d 316, 613 N.W.2d 120. Wisconsin Stat. § 655.007 states, "any patient or the patient's representative having a claim or any spouse, parent, minor sibling or child of the patient having a derivative claim for injury or death on account of malpractice is subject to . . . chapter [655]." In light of common law limitations of the right of adult children "to recover for loss of society and

13

companionship in medical malpractice cases," we have read § 655.007 as excluding adult children from the list of available wrongful death claimants in Chapter 655 cases. Czapinski, 236 Wis. 2d 316, ¶¶23-25 (rejecting a request to "broaden the classification of claimants entitled to recover in such suits to include adult children"); Lornson, 302 Wis. 2d 519, ¶20 ("Only minor children . . . have derivative claims under Wis. Stat. § 655.007." (Emphasis in original.)).

¶28 Andruss alleges that Divine Savior was negligent in the care and treatment of Oros. As a result of Divine Savior's negligence——specifically, a failure to develop an appropriate plan of care and a failure to provide Oros adequate oversight—— Andruss alleges that she experienced injuries such as the loss of society and companionship. Andruss is the adult child of Oros, and she can bring this wrongful death claim only if Divine Savior falls outside the coverage of Chapter 655. Czapinski, 236 Wis. 2d 316, ¶¶23-25; Wis. Stat. § 655.007. Divine Savior is covered by Chapter 655 only if it was a health care provider, as defined by Wis. Stat. § 655.002.

¶29 Andruss's wrongful death claim is not against a health care provider covered by Chapter 655. The claim is based on alleged negligence on the part of Divine Savior's CBRF, the care plan and treatment provided to Oros at the CBRF, and the injuries Oros experienced while residing at the CBRF. The wrongful death at issue was allegedly a result of Oros's fall at Divine Savior's CBRF in February 2016, after five prior falls at

the same CBRF. Oros does not seek to recover for negligence at Divine Savior's hospital or its nursing home.

¶30 CBRFs are not included in the list of health care providers under Wis. Stat. § 655.002. Reading the plain text of § 655.002, the list contains "hospitals," hospital affiliates which "provide[] diagnosis or treatment of, or care for, patients of [a] hospital," and "nursing home[s] . . . whose operations are combined as a single entity with a hospital," among other service providers. § 655.002(h), (i), (j). The legislature expressly identified individuals and service providers covered by Chapter 655 and did not include CBRFs on the list. This is a textbook example of the canon expressio unius est exclusio alterius, "[t]he expression of one thing implies the exclusion of others." State v. Dorsey, 2018 WI 10, ¶29, 379 Wis. 2d 386, 906 N.W.2d 158; Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 107-11 (2012); see, e.g., FAS, LLC v. Town of Bass Lake, 2007 WI 73, ¶27, 301 Wis. 2d 321, 733 N.W.2d 287 (explaining that an ordinance explicitly excluding "public roadways" from lot area computation made no mention of navigable streams, thus navigable streams were not excluded from the computation). Section 655.002 unambiguously places the CBRF services forming the basis of Andruss's lawsuit outside the scope of Chapter 655.

¶31 "[S]tatutory language is interpreted in the context in which it is used," and context supports our reading of Wis. Stat. § 655.002. Kalal, 271 Wis. 2d 633, ¶46. To define nursing homes and hospitals, § 655.002 cites to definitions in

15

Chapter 50 on medical licensure. Chapter 655 uses the definition of hospital included in Wis. Stat. § 50.33(2)(a) and (c):

> (2)(a) "Hospital" means any building, structure, institution or place devoted primarily to the maintenance and operation of facilities for the diagnosis, treatment of and medical or surgical care for 3 or more nonrelated individuals hereinafter designated patients, suffering from illness, disease, injury or disability, whether physical or mental, and including pregnancy and regularly making available at least clinical laboratory services, and diagnostic X-ray services and treatment facilities for surgery, or obstetrical care, or other definitive medical treatment.

> . . .

> (c) "Hospital" includes "special hospitals" or those hospital facilities that provide a limited type of medical or surgical care, including orthopedic hospitals, children's hospitals, critical access hospitals, mental hospitals, psychiatric hospitals or maternity hospitals.

¶32 The coverage of a hospital under Chapter 655 is tied to specific buildings or structures where medical care is provided.[5] The definition does not mention or include CBRFs. Furthermore, hospitals are subject to their own regulations and

---

[5] Notably, in adopting only subsections (a) and (c) of Wis. Stat. § 50.33(2) as the definition of hospitals, Chapter 655 excluded subsection (b), which would have expanded the definition beyond the more narrow physical scope in subsections (a) and (c). Section 50.33(2)(b) includes all "related facilities . . . operated in connection with hospitals." § 50.33(2)(b). The legislature deliberately chose the limited definition of hospitals included in Wis. Stat. § 655.002. See State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110 (explaining that "the legislature's intent is expressed in the statutory language").

16

government oversight under Chapter 50, separate from that of CBRFs. See, e.g., Wis. Stat. § 50.36 (describing rules governing hospitals).

¶33 Wisconsin Stat. § 50.01, where nursing homes are defined, also provides a definition of CBRFs, and the definitions of nursing homes and CBRFs are distinct. See Hecker v. DHHS, 197 Wis. 2d 441, 458, 541 N.W.2d 766 (1995) (explaining, when interpreting a prior version of § 50.01, that the removal of "intermediate care facilit[ies] . . . created a two-tiered scheme: facilities were now either nursing homes or CBRFs"). A nursing home "means a place where 5 or more persons who are not related to the operator or administrator reside, receive care or treatment and, because of their mental or physical condition, require access to 24-hour nursing services, including limited nursing care, intermediate level nursing care and skilled nursing services . . . ." § 50.01(3). By contrast, a CBRF

> means a place where 5 or more adults who are not related to the operator or administrator and who do not require care above intermediate level nursing care reside and receive care, treatment or services that are above the level of room and board but that include no more than 3 hours of nursing care per week per resident.

§ 50.01(1g). Therefore, while nursing homes require more intensive oversight and medical care, "24-hour nursing services," CBRFs offer more limited care, "no more than 3 hours of nursing care per week per resident." § 50.01(3), (1g).

17

¶34 Further, the legislature has enacted provisions in Chapter 50 that provide licensing and regulations specifically directed toward CBRFs. Wisconsin Stat. § 50.035 describes regulations on CBRF operations such as the extent of personnel training and the installation of smoke detectors. Wisconsin Stat. § 50.037 provides specific rules for CBRF licensure and fees. Different provisions govern the licensure and regulation of nursing homes. See Wis. Stat. §§ 50.04, 50.045, 50.095.

¶35 Thus, it is clear from the plain text of Wis. Stat. § 655.002 and the definition and regulation of service providers under Chapter 50, from which Chapter 655 derives its legal definitions, that hospitals, nursing homes, and CBRFs are different operations with different meanings. While Chapter 655 covers hospitals and certain nursing homes, it unambiguously does not cover CBRFs.

¶36 The defendants argue that this plain reading of Wis. Stat. § 655.002 must be rejected because Divine Savior also operates a hospital and a nursing home. Yet nowhere in the text of § 655.002, nor in any other statutory provision of which the court has been made aware, are CBRFs subject to Chapter 655 so long as they share common corporate ownership with service providers that Chapter 655 does cover. Instead, § 655.002 covers hospitals, which are statutorily defined as "building[s], structure[s], institution[s] or place[s]" which do not include CBRFs, Wis. Stat. §§ 655.002(1)(h), 50.33(2)(a) & (c); hospital affiliates that "provide[] diagnosis or treatment of, or care for, patients of the hospital," § 655.002(1)(i); and nursing

18

homes, which are statutorily distinct from CBRFs, Wis. Stat. §§ 655.002(1)(j), 50.01(3) & (1g). Under the facts agreed upon by the parties, Divine Savior's CBRF is not a hospital, it did not provide Oros treatment or care while she was a hospital patient, and it did not operate as a nursing home.

¶37 The legislature had the ability to cover CBRFs that share common operations and corporate ownership with a hospital. It expressly did so for nursing homes. Wis. Stat. § 655.002(j) (covering a nursing home so long as its "operations are combined as a single entity with a hospital"); see State v. Yakich, 2022 WI 8, ¶24, 400 Wis. 2d 549, 970 N.W.2d 12 (explaining that the legislature "plainly demonstrated the ability" to establish a different standard and "declined to do so"). Simply because Divine Savior owned a hospital and nursing home, in addition to owning a CBRF, is of no moment.

¶38 The defendants note that Oros received medical services from Divine Savior's hospital and nursing home during the timeframe at issue. It is undisputed that after Oros's various falls at the CBRF, she was taken to the hospital, and after she fractured her wrist upon her fourth fall, she received treatment at both the hospital and nursing home. The hospital, nursing home, and CBRF are on the same medical campus.

¶39 But simply receiving services from a nearby health care provider that is covered by Chapter 655 does not in any way imply that other individuals and entities, which also provide care, are covered by Chapter 655. Many individuals and entities that provide health-related care and treatment are not covered

19

by Chapter 655. The chapter covers certain "physicians" and "nurse anesthetists," but it does not cover "ambulance service providers," "first responder[s]," or "registered nurse[s]." Wis. Stat. § 655.002; Phelps v. Physicians Ins. Co. of Wis., Inc., 2005 WI 85, ¶51, 282 Wis. 2d 69, 698 N.W.2d 643; Patients Comp. Fund v. Lutheran Hosp., 223 Wis. 2d 439, 455, 588 N.W.2d 35 (1999). Just as registered nurses do not fall under Chapter 655 simply because they help a patient who also received care from a physician, CBRFs are not covered by Chapter 655 simply due to the fact that their residents received treatment at a hospital or nursing home, even if those providers share common corporate ownership with the CBRF.[6] The circuit court

___

[6] The defendants also point to Chapter 655's definition of patient. Wisconsin Stat. § 655.001(10) defines patient as "an individual who received or should have received health care services from a health care provider or from an employee of a health care provider acting within the scope of his or her employment." According to the defendants, Divine Savior is a health care provider under Chapter 655 through its operations of a hospital, and Divine Savior employed the individuals who administered care to Oros at the CBRF. This logic is too clever by half. Oros is a "patient" under Chapter 655 only if she received health care "from a health care provider," as defined by Wis. Stat. § 655.002. See § 655.001(8) (providing the definition of health care provider by reference to § 655.002). CBRFs are not health care providers under § 655.002, notwithstanding their corporate associations. Further, Chapter 655 protection extends to "employee[s] of . . . health care provider[s]," as defined by Wis. Stat. §§ 655.001(8) and 655.002, only when they are acting within "the scope of [their] employment" with the healthcare provider. Wis. Stat. § 655.005(1); see also § 655.001(10) (stating that "patients" under Chapter 655 include those receiving care from "an employee of a health care provider acting within the scope of his or her employment"). Even if Divine Savior hires employees that serve multiple facilities, the scope of employment for the employees would be limited to the facility where the negligence allegedly

below can make evidentiary rulings and give instructions that would properly allow a jury to determine the liability of Divine Savior, if any, based on its CBRF operations alone.

¶40  The plain text of Wis. Stat. § 655.002 demands that CBRFs be treated differently than hospitals and nursing homes. While Andruss may be prohibited from bringing a wrongful death claim against Divine Savior's hospital and nursing home, she is not barred from bringing the claim against Divine Savior's CBRF. To the extent the defendants believe this is unfair or ill-conceived, they may present their complaints to the political branches which write and enact the law.  See State ex rel. Cramer v. Wis. Ct. of Appeals, 2000 WI 86, ¶17, 246 Wis. 2d 473, 613 N.W.2d 591 (under the proper judicial role, we may not "substitute[] judicial policy views for that of the legislature").  Our task is to apply the law as it is written. The defendants' Motion for the Application of Chapter 655, construed as a motion for summary judgment, must be denied.

## IV.  CONCLUSION

¶41 Oros allegedly died as a result of negligence on the part of Divine Savior.  The defendants argue that Andruss cannot bring a wrongful death claim as an adult child of Oros. According to the defendants, the liability protections given to certain healthcare providers under Chapter 655 bar Andruss's claim.

---

took place.  Thus, Oros was not a "patient" under Chapter 655 when she received care at Divine Savior's CBRF, and Andruss's wrongful death claim is not barred.

21

¶42 When Oros received the injuries at issue in this case, she was a resident of a CBRF owned and controlled by Divine Savior. The basis of Andruss's claim is alleged negligence on the part of the CBRF, and CBRFs fall outside the liability protections of Chapter 655, even if they share common ownership with hospitals and nursing homes. Thus, dismissal under Chapter 655 of Andruss's wrongful death claim is not warranted. The court of appeals is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.